## COMMONWEALTH *vs.* WILLIAM A. GLOVER.

An indictment set forth that the grand jury presented that "some person or persons" to them unknown, broke and entered a building in the night-time with intent to steal, " against the peace of the Commonwealth, and contrary to the form of the statute in such case made and provided ; " that the grand jury further presented that J. S. did feloniously and maliciously procure " said person and persons " to commit the crime, "against the peace of the Commonwealth, and contrary to the form of the statute in such case made and provided." *Held*, that this was a good indictment of one count against J. S. under the Gen. Sts. *c.* 168, § 4.

On an indictment for being accessory to a crime, committed by a person unknown, the judge instructed the jury, that if the name of the principal was known to the grand jury, it was a variance ; that the fact that such name was known to them need not be proved affirmatively by the Commonwealth; but that if there was evidence in the matter, the burden of proving that it was known was on the Commonwealth. *Held*, that the defendant had no ground of exception.

Whether a witness is an accomplice is a question of fact for the jury.

On an indictment for being accessory before the fact to the crime of breaking and entering a building at night with intent to steal, and stealing therein, it appeared that the breaking was through a thick brick wall into the vault of a bank. *Held*, (1) that there was no variance if there was any breaking and entering at night, though the entry was not consummated till after daylight; and (2) that the defendant need not have known that the crime was to be committed at night.

INDICTMENT returned into the Superior Court for Suffolk at May term, 1871, holden at Boston, as follows: " The jurors for the Commonwealth of Massachusetts on their oath present that some person or persons to the jurors aforesaid unknown, on the twentieth day of November, in the year of our Lord one thousand eight hundred and sixty-nine, at Boston aforesaid, with force and arms, a certain building there situate, to wit, the banking-house of the Boylston National Bank of Boston, in the night-time of said day, did break and enter with intent then and therein to commit the crime of larceny, the said person or persons to the jurors aforesaid unknown, so breaking and entering with said intent, then and there not being armed, nor arming themselves in said building with a dangerous weapon, nor making any assault upon any person then being lawfully therein, no person lawfully therein being put in fear, and divers promissory notes, payable to the bearer on demand, current as money in said Commonwealth, of the amount and of the value of one hundred dollars, a more particular description of which is to the jurors unknown, and divers internal revenue stamps of the United States, a more particular description of which is to the jurors aforesaid unknown, of the value of nine hundred dollars, of the property, goods, and chattels of the said ·Boylston National Bank of Boston, in said building then being found, did then and there in said building feloniously steal, take and carry away, against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided.

" And the jurors aforesaid, upon their oath aforesaid, do further present that William A. Glover and Alonzo Ainsworth, otherwise called Dick Broker, late of Boston aforesaid, in the county aforesaid, laborers, before the said felony and burglary and breaking and entering said building with said intent was committed, in form and manner aforesaid, to wit, on the first day of November in the year of our Lord one thousand eight hundred and sixty-nine, at Boston aforesaid, in the county of Suffolk aforesaid, did feloniously and maliciously counsel, hire and move, incite, command, and in other ways procure said person and persons to the jurors aforesaid unknown, so breaking and entering said building

with said intent, the said felony and burglary and breaking and entering said building with said intent, in manner and form aforesaid, to do and commit, and became and were then and there and thereby accessories thereto, to wit, to said felony and burglary, and breaking and entering said building with said intent, before the fact. Against the peace of the Commonwealth, and contrary to the form of the statute in such case made and provided."

The defendant Glover was tried on this indictment in the Superior Court, before *Brigham*, C. J. Before the jury was empanelled, he moved that the indictment might be quashed for the following reasons: " Because it is not sufficient in law upon which to find the defendant guilty of the offence charged; because there is no allegation of who the principal was that committed the principal offence; because it is not alleged that the person who committed the principal offence has been tried or found guilty, and hence the defendant cannot be tried as accessory before the fact; because there is no allegation against the principal person who committed the principal felony, and that the accessory is to be tried with the principal, or that he is the principal, or committed a substantive felony; because the indictment does not charge any person, known or unknown, with the commission of the principal felony, with substantial precision and certainty; because the indictment does not show to whom the defendant was accessory; and because the second count is wholly inadequate to charge the defendant with a substantive felony in that it does not describe in any manner the felony of which the defendant is charged to have been accessory, and the allegations are insufficient to import the language of the first count into the second." The judge overruled the motion.

There was evidence tending to show that on the morning of Monday, November 20, 1869, the vault of the Boylston National Bank was discovered to have been broken open, and a large lot of property stolen; that the entrance had been made through the wall of the building where another building adjoined it; that the aperture had been made through the brick walls of both buildings from a room in the adjoining building; that this room had been occupied for some time by a man calling himself Judson; that he

was in the room on Sunday; that noises were heard in the room on Sunday; and that, besides Judson, two other men, named Corliss and Wilson, were concerned in the breaking and entering.

Thomas H. Pratt testified that he was introduced to the defendant as a dealer in stolen goods; that about a week before the commission of the crime the defendant told him that "a job was coming off, and he was to have the sale of the stuff;" that on the Thursday before the crime, the defendant pointed out to him the Boylston National Bank, and said, "that bank is going to catch hell in a few days;" and that on the next Monday, the defendant brought him a large number of bonds which he bought. Some bonds were shown to the witness, and he identified them as among those sold to him by the defendant, and it was afterwards proved that they had been in the vault of the bank.

The defendant contended that there was a variance between the allegation and the proof in regard to the persons who committed the principal felony, and asked the judge to rule that it must be proved affirmatively by the Commonwealth that it was committed by persons whose names were not disclosed to the grand jury. But upon this subject the judge instructed the jury as follows: "If the names of the persons who committed the crime of breaking and entering were disclosed and known to the grand jury at the time when the indictment was found, their names ought to have appeared in the indictment, and their absence from the indictment, if so known and disclosed, entitled the defendant to an acquittal; but the fact that such names were unknown to the grand jury need not be proved affirmatively by the Commonwealth; but if there is evidence on that matter in this case, the burden of proving that such names were not disclosed to or known by the grand jury is upon the Commonwealth."

The defendant asked the judge to instruct the jury, as matter of law, that Pratt was to be considered an accomplice, and within the rule as to corroboration, but the judge declined so to instruct them, and instructed them as follows: "If Pratt was informed by the defendant that the offence of breaking and entering, alleged in the indictment, was to be committed, and that stolen property to be thus procured was to be disposed of by the

defendant, which Pratt engaged to receive or buy, he was an accomplice to the crime, as a person who had the criminal purpose of receiving stolen property, and concealing the larceny of the same. The considerations affecting the testimony of an accomplice do not require that an accomplice should appear to be an equal in criminality of the person of whose criminality he testifies; but the fact that he has not participated equally with that person in the criminality testified of is to be considered by the jury in determining how far it is safe to accept and act upon the testimony of an alleged accomplice." Instructions as to what would amount to corroboration, if the jury should find Pratt to be an accomplice, were given, to which no objections were made.

The defendant asked the judge to instruct the jury " that unless the jury should find that the principal felony was committed in the night-time, the defendant could not be convicted; that they could not so find, unless they found that the building named in the indictment was feloniously broken and entered in the night-time; that it was not sufficient if part of the breaking through the wall was done in the night, unless the entry was also made in the night; that the offence was not completed until there was an actual entry within the building; and that in order to satisfy the indictment, it must appear that such entry was made in the night, and the defendant was accessory before the fact to that offence."

The judge did not instruct the jury as requested, but upon this subject instructed them as follows: " If the brick walls of the building occupied by the Boylston National Bank were in the night-time broken, and any entry made into the walls so broken by the persons who broke said walls, and those acts were for the purpose of stealing the property within said walls, the breaking and entering alleged in the indictment would be proved, notwithstanding such breaking and entering were acts of a series of acts by the same person for the same purpose, some of them in the daytime, and some of them in the night-time, and were not the final acts by which an entry into the building of said bank, and access to the property therein intended to be stolen, was consummated; and notwithstanding such final acts were in the daytime. A

person who counselled, hired or otherwise procured such acts of breaking and entering, would be proved an accessory before the fact to the same, if not being present at such acts, he knew that such acts of breaking and entering would be partly by night and partly by day, in consummating the breaking and entering, and consummating the purposes of such breaking and entering. A person who, knowing the purpose of another person to commit a specific crime, gives advice to that other person as to the mode or method of the crime, or encouragement by engaging to assist in disposing of the fruits of the proposed crime, or in any mode influencing the commission of it, counsels the proposed crime."

The jury returned a verdict of guilty against the defendant, and he alleged exceptions.

*S. B. Ives, Jr., & H. N. Sheldon,* for the defendant.

*J. C. Davis,* Assistant Attorney General, for the Commonwealth.

AMES, J. The motion to quash rests mainly upon the mistaken assumption that the indictment contains two counts, and was intended for the prosecution of the accessory with the principal. It really contains but a single count, in which the perpetration of a crime, by some unknown person or persons is recited, perhaps with more formality than was absolutely necessary, and then the participation of the defendant in the crime, as accessory before the fact, is properly charged. The use of the " *contra formam* clause," as it is called, in which the act described in the recital is declared to be against the peace, &c., does not convert that recital into a separate count.

The indictment, after alleging that the crime was committed by " some person or persons " to the jurors unknown, goes on to charge that the defendant did feloniously, &c., incite and procure " said person and persons," to the jurors unknown, to commit the crime. But we see no objection to this mode of presenting the case, either for variance or on any other ground. The substance of the charge is that the defendant advised and procured the perpetration of the crime. It is questionable whether this charge could have been properly set forth in the alternative or disjunctive form, namely, that he advised the person, or persons, engaged

in it. The form adopted is equivalent to saying that whoever may have been engaged in it acted under his procurement. Under the Gen. Sts. 168, § 4,* there can be no doubt that such procurement is a substantive felony, for which one might be indicted with the principal felon, or after his conviction; or separately as for a substantive offence, and whether the principal had or had not been convicted, or was or was not amenable to justice. *Commonwealth* v. *Smith*, 11 Allen, 257, 259.

The question whether the grand jury did or did not know the names of the persons by whom the breaking and entering were alleged to have been committed was submitted to the jury with proper instructions. The inquiry is, not what the grand jury could or ought to have known, but what they did know. In the absence of all evidence on the subject, their averment that they did not know might be sufficient; but if it should be a question in relation to which there was evidence, the burden of proof would be upon the Commonwealth. *Commonwealth* v. *Stoddard*, 9 Allen, 280. *Commonwealth* v. *Sherman*, 13 Allen, 248.

The question whether the witness, Pratt, was an accomplice or not was properly submitted to the jury. If the court had ruled as a matter of law that he was an accomplice, the ruling would have included the assumption of the defendant's guilt, inasmuch as the only evidence of participation in the crime was a participation directly and immediately with the defendant. For that reason the question, whether he was an accomplice or not, was substantially identical with the question as to the guilt of the defendant. This was clearly for the jury, and not for the court. Any ruling by the court to the effect that his testimony required corroboration, must have been hypothetical. *Commonwealth* v. *Ford, ante,* 394. We must assume, as there is no other exception

---

* "Whoever counsels, hires, or otherwise procures, a felony to be committed, may be indicted and convicted as an accessory before the fact, either with the principal felon, or after his conviction ; or may be indicted and convicted of a substantive felony, whether the principal felon has or has not been convicted, or is or is not amenable to justice ; and in the last mentioned case may be punished in the same manner as if convicted of being an accessory before the fact."

on this point, that the jury were advised that it is not safe to convict upon the uncorroborated testimony of an accomplice. Whether the witness stood in the position of an accomplice depended upon the tendency of his testimony to connect him with the offence of which he testified. This proposition was substantially included in the instructions given. Enough was said to call the attention of the jury to the position of the witness, and to the effect which his own account of his connection with the transaction ought to have upon his credit.

The court was requested to rule that, unless the jury should find that the " principal felony " was committed in the night-time, the defendant could not be convicted. The effect of such a ruling, without qualification or explanation, must have been to lead the jury to suppose that they could not find him guilty, except upon proof that the final consummation of the crime, including the actual larceny charged in the indictment, occurred in the night-time. But we do not hold that the prosecution was to be confined to such narrow limits. If in the operation of making a practicable opening through the wall, any one of the persons engaged in it had in the night-time passed through into the building, or thrust his hand or arm through, for the purpose of removing bricks, plastering or rubbish of any kind, in order to enlarge the opening, or to make it more safe or convenient for use, it would be a breaking and entering in the night-time within the meaning of the indictment. *Rex* v. *Bailey*, Russ. & Ry. 341. *Rex* v. *Davis*, Ib. 499. 2 East P. C. 487. It has been decided that the breaking and entering need not be shown to have occurred on the same night. Thus in *Rex* v. *Smith*, Russ. & Ry. 417, where the breaking occurred on Friday night, and the entry before sunrise on Monday morning, and both in pursuance of the same design, and separated only by what Mr. Justice Park called " the natural accidents of the transaction itself," the indictment was sustained. See also 1 Gabbett Crim. Law, 176; 1 Hale P. C. 551. It is well settled that it is a sufficient entry " when the thief breaketh the house, and his body, or any part thereof, as his foot or his arm, is within any part of the house." 3 Inst. 64. 1 Hale P. C. 551. 2 East P. C. 490. In *Gibbons's Case*, Fost. C. L. 107, reaching

in the hand through a broken pane in order to unfasten a window, was held sufficient. In this latter case, the immediate purpose of reaching in the hand was merely to open a passage, in order to have access to the goods which the thief intended to steal. It would have been none the less a burglarious entry, if the purpose of the thief had been to wait for hours, or even until the dawn of day, before he should venture on the next step of actually opening the window, and climbing through it into the house.

The instructions given at the trial were intended to enforce this distinction. The court was dealing with a case in which the breaking was not only literal, but must have required much time and labor for its completion. The language used by the judge was this, " If the brick walls of the building occupied by the Boylston National Bank were in the night-time broken, and any entry made into the walls so broken," &c. The proper interpretation of this language is, " If the walls were broken through; " and the " entry made into the walls so broken " can only mean an entry through, and not merely into the body or substance of the wall itself. The question suggested was as to the time, and not as to the nature of the breaking and entering. To prevent the jury from confining their attention to the actual robbery, as if the incidents immediately connected with that final event constituted the specific and only felony charged, he explains to them in substance that if, at any time before that event, and in the course of the general purpose, anything amounting to an entry on the part of any person engaged in it occurred in the night-time, it was sufficient for the purposes of the indictment; that it was immaterial that part of the work was done in the day-time; and also that it would make no difference in the character and legal identity of the crime, even though the final operation of forcing open the vault and stealing its contents was postponed till daylight. In order to hold the defendant responsible as an accessory before the fact, it is not necessary to prove that he knew or supposed that it was to be committed in the night. If he procured or incited the commission of the offence, he cannot escape responsibility by leaving the time, place and manner of its execution to his associates. Fost. C. L. 369. *Exceptions overruled.*