COMMONWEALTH vs. WILLIAM J. BURKE.

Berkshire. April 3, 1984. — August 13, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Breaking and Entering. Practice, Criminal,* Sentence.

At the trial of a defendant charged with violating G. L. c. 266, § 16, a finding
of breaking and entry was warranted by evidence that an outer storm
window of a house had been shattered, that the wooden sash of the inner
window had pry marks on it, that the defendant appeared at the scene
with a bloody hand, and that a crowbar and hammer, both appearing
bloodstained, were later found near the front door. [689-693]

At the trial of an indictment charging breaking and entering a building in the
nighttime with intent to commit a felony, certain remarks made by the
prosecutor in closing argument suggesting that the defendant had moved
a screen did not amount to asking the jury to make an improper inference.
[693-694]

On appeal from a conviction of violating G. L. c. 266, § 16, there was no
merit to the defendant's contention that the judge considered improper
factors in sentencing the defendant. [694-695]

COMPLAINT received and sworn to in the Southern Berkshire
Division of the District Court Department on April 9, 1982.

On appeal to the jury session of the Central Berkshire Division, the case was tried before *Ferris, J.*

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Robert J. Carnes,* Assistant District Attorney, for the Commonwealth.

*Mary Lou Rup* for the defendant.

LYNCH, J. The defendant was convicted by a jury of breaking
and entering a building in the nighttime with intent to commit
a felony, a common law crime now codified by statute at G. L.
c. 266, § 16.[1]

---

[1] General Laws c. 266, § 16, as appearing in St. 1974, c. 462, § 2, states:
"Whoever, in the night time, breaks and enters a building, ship or vessel,

The jury could have reached their verdict from the following evidence. After hearing the sound of breaking glass in the early hours of the morning, a thirteen year old girl awakened her mother and they proceeded to investigate. Upon seeing a figure, later identified as the defendant, walk by a window, the daughter screamed. The defendant then knocked on the front door, and, after identifying himself, stated that a neightbor had called his father (a police officer) regarding some suspicious activity in the neighborhood and that his father had asked him to check the premises. There was uncontroverted evidence showing that this statement was false. After noticing that one of the defendant's hands was bleeding and that both of them were shaking, the daughter (at her mother's direction) bandaged the injured hand. Later that morning, it was observed that the outer storm window of a window at the front of the house had been shattered, and the wooden sash of the inner window had pry marks from a crowbar or similar instrument. Other than this, however, the inner window was intact. A crowbar and a hammer, both appearing bloodstained, were later found near the front door.

The defendant appealed from his conviction to the Appeals Court, which overturned the District Court's verdict on the ground that there was no showing made of an "entry" into the house, within the meaning of G. L. c. 266, § 16. 17 Mass. App. Ct. 917 (1983). We granted the Commonwealth's application for further appellate review. We now affirm the judgment of the District Court.

We dispose first of a statutory prerequisite about which there is little contention, that someone did in fact "break" into the house. The statutory element of a breaking is broadly defined. It has long been understood to include all actions "violating the common security" of a dwelling, not only obvious intru-

with intent to commit a felony, or who attempts to or does break, burn, blow up or otherwise injure or destroy a safe, vault, or other depository of money, bonds or other valuables in any building or place, with intent to commit a larceny or felony, whether he succeeds or fails in the perpetration of such larceny or felony, shall be punished by imprisonment in the state prison for not more than twenty years or in a jail or house of correction for not more than two and one half years."

sions into locked areas but also the "lifting a latch and opening the door, though not bolted or locked; the shoving up a window, though not fastened . . . and various other acts." *Commonwealth* v. *Stephenson,* 8 Pick. 354, 355 (1829). See *Commonwealth* v. *Tilley,* 355 Mass. 507 (1969); *Commonwealth* v. *Lewis,* 346 Mass. 373 (1963), cert. denied, 376 U.S. 933 (1964). In *Commonwealth* v. *Tilley, supra* at 508, we characterized a breaking as a situation where, in the course of a criminal enterprise, the intruders "moved to a material degree something that barred the way." The shattering of the outer storm window by the defendant clearly fits this description. His lack of success in penetrating the wooden sash of the inner window is of no moment, since by then he had clearly "violat[ed] the common security" of the dwelling.

It is less clear whether by breaking the outer window and attempting to open the inner window the defendant effected an "entry" into the house, within the meaning of the statute. The legislative history of G. L. c. 266, § 16, and the cases applying it, shed little light on the meaning to be accorded the entry requirement in this somewhat singular context. However, the crime of breaking and entering is an ancient one, and examination of its common law roots provides guidance in discerning the meaning of the term in the instant case. As has long been recognized, a statute should not be interpreted as being at odds with the common law "unless the intent to alter it is clearly expressed." *Commonwealth* v. *Knapp,* 9 Pick. 495, 514 (1830). No such intent can be gleaned from a fair reading of G. L. c. 266, § 16.

At common law, the general rule regarding the crime of breaking and entering was that any intrusion into a protected enclosure by any part of a defendant's body was enough to satisfy the legal requirement of entry. *Commonwealth* v. *Glover,* 111 Mass. 395 (1873). *Rex* v. *Davis,* Russ. & Ry. 499 (1823). *Rex* v. *Bailey,* Russ. & Ry. 341 (1818). Relying on English precedent, the court in *Glover* observed that "[i]t is well settled that it is a sufficient entry 'when the thief breaketh the house, and his body, or any part thereof, as his foot or his arm, is within any part of the house.' 3 Inst. 64. 1 Hale P.C.

551. 2 East P.C. 490." *Commonwealth* v. *Glover, supra* at 402. Two English cases, *Rex* v. *Bailey, supra* and *Rex* v. *Perkes,* 1 Carrrington & Payne 300 (1824), addressed a situation of more immediate interest, each dealing with the circumstance of a defendant breaking the glass of an outer window and attempting to penetrate a fastened inside shutter, only to be surprised before completing the latter act. Each court ruled that on these facts a sufficient entry took place, holding in effect that the placement of the defendant's hand in the space between the outer window and the shutter was intrusive enough to constitute an entry at law.

We can find no support at common law for the view voiced by the Appeals Court that such an entry must be accompanied by a removal of all remaining barriers (i.e., the inner window) for it to be actionable. Contrast *State* v. *Hart,* 119 Vt. 54, 58 (1955); *State* v. *Lapoint,* 87 Vt. 115, 119 (1913). Instead, the more common view is that outer window coverings should be treated as part of the dwelling itself, and any entry beyond them, no matter if further impeded by additional window coverings, should be punished. See *State* v. *Chappell,* 185 S.C. 111, 113 (1937) (referring to penetration through an outer screen accompanied by a failed attempt to enter the underlying window, the court noted: "[the] screen was more than a mere protection against flies and mosquito[e]s; it was an enclosing part of the dwelling house. . . . This was not only a breaking, but was an entry sufficient in law to constitute burglary . . ."). In addition to maintaining consistency with common law precedent, characterizing the defendant's breaking of the storm window as an entry for legal purposes is good common sense. We fail to understand why a penetration of this nature should be distinguished from penetrating an ordinary window, or indeed from a much less intrusive action such as passing through an unlocked door or window, which is an "entry" beyond dispute. Evidence that the defendant placed his hand between the broken storm window and the inner window would be sufficient to warrant a finding of an entry under G. L. c. 266, § 16.

The defendant argues that there was insufficient evidence introduced by the Commonwealth for the jury reasonably to conclude that a part of the defendant's body did penetrate the space between the two windows. In this regard, the defendant correctly points out that if only an instrument (e.g., a crowbar) intruded into this space, it must be proved that the instrument was *not only* used for the purpose of facilitating the break, but that it also provided the means "by which the property was capable of being removed, introduced subsequent to the act of *breaking,* and after that essential preliminary had been fully completed" (emphasis in original). *Rex* v. *Hughes,* 1 Leach 406, 407 (1785). The instruments at issue, a crowbar and a hammer, were clearly only adequate to perform the initial task of effectuating the break.

However, a finding of an entry can be based upon an inference as well as physical proof. *Commonwealth* v. *Lewis,* 346 Mass. 373, 377 (1963). *Commonwealth* v. *Connors,* 345 Mass. 102 (1962). There was circumstantial evidence from which the jury could have found that the defendant's hand or arm did enter the space between the two windows. The jury heard testimony regarding the blood on the defendant's hand and the discovery of blood on the crowbar and hammer, both facts being consistent with the defendant's hand coming into contact with (and thereby penetrating) the outer storm window. The jury also heard an account of an alleged conversation between the defendant and the husband (who was not at home at the time of the incident) several months later. The jury could have believed that, in the course of this conversation, the defendant admitted that he had broken into the house. Such an admission, when considered together with the other evidence, was enough to warrant a finding by the jury than an entry had occurred. *Commonwealth* v. *Fiore,* 364 Mass. 819, 822 (1974). *Commonwealth* v. *Kimball,* 321 Mass. 290, 292-293 (1947). Correspondingly, the judge's denial of the defendant's motions for a required finding of not guilty was proper since "the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, [was] sufficient . . . to permit the jury to infer the existence

of the essential elements of the crime charged." *Commonwealth v. Latimore,* 378 Mass. 671, 676-677 (1979), quoting *Commonwealth* v. *Sandler,* 368 Mass. 729-740 (1975).

The defendant also bases his claim of error on the contention that the prosecutor made reference in her argument to evidence not introduced during the jury trial. The defendant contends that at the earlier bench trial the mother testified that at some time after the break-in, she removed the screen (covering the broken storm window) from its tracks, but that, during the jury trial, no evidence was submitted as to how or when the screen was removed from the window. The defendant argues, in effect, that the prosecutor, in her closing argument, asked the jury to infer that the defendant removed the screen from its tracks, a point on which there was no evidence and which had been shown not to be the case in the earlier trial.

After carefully studying the transcript of the prosecutor's argument, we find no indication that the prosecutor attempted to persuade the jury to make this improper inference. Instead, it appears that the prosecutor was merely trying to urge the jury to infer that the screen had to have been *moved* by the defendant to some degree in order to allow his hand to penetrate the storm window.[2] On the evidence submitted, this was a permissible inference. "Counsel has the right to argue inferences from the evidence favorable to his case, and the precise form should not control unless it tends to lead the jury to an im-

---

[2] The relevant sections of the prosecutor's closing argument were as follows: "You don't have evidence of where the screen . . . was first thing in the morning. But you notice glass that has fallen out of the window, so you can infer that the screen is pushed out or tampered with, at least enough to let the glass in the storm out.

"And you have the pictures of the windows and they show you — and I expect and I hope that you'll look at these pictures when you get into the jury room, that there are pry marks on . . . first the screen, then the storm, and finally, in attempt to pry right into the . . . sash, which is at the very back.

". . . .

"Don't you have to find a way to move out the screen so that the broken glass would fall out, because you know for sure that the broken glass in the middle window got out on the ground, and that means that there was some movement, movement of the glass and movement of the screen."

proper inference not from the evidence but from the apparent personal knowledge of the attorney." *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 315 (1973). There was ample evidence from which the jury could have inferred that the defendant moved the screen to effectuate the breaking of the storm window. Pry marks were found on the screen tracks, in addition to those on the inner wooden sash. Further, the discovery of glass on the ground would be consistent with the defendant lifting up the screen to permit the pieces of glass to drop down from the window. We therefore conclude that there was no impermissible inference urged by the prosecutor in her closing argument.

Finally, the defendant makes two arguments with respect to the sentence imposed, which we shall dispose of summarily. Although the sentence of two and one-half years in a house of correction (eighteen months to be served, balance suspended) was within the statutory guidelines set out in G. L. c. 266, § 16, the defendant maintains that the judge weighed certain improper considerations in making his sentencing decision. Evaluation of the defendant's arguments must be guided by the principle that "a judge may consider many factors which would not be admissible as evidence in the trial of a case. The judge may consider hearsay, the defendant's behavior, family life, employment, and various other factors. . . . The judge is permitted great latitude in sentencing, provided the sentence does not exceed statutory limits." *Commonwealth* v. *Celeste,* 358 Mass. 307, 309-310 (1970).

The defendant points first to the judge's mention of the fact (during his discussion of the sentence) that the charge in the complaint was reduced from burglary (G. L. c. 266, § 15) to breaking and entering in the nighttime (G. L. c. 266, § 16), so as to confer jurisdiction on the District Court. The defendant argues that the judge improperly allowed his sentencing decision to be influenced by this fact, and, by parsing the judge's comments closely, the defendant presents us with a statement by the judge supposedly depicting this improper influence.[3]

---

[3] The judge commented: "So it seems to me at this particular point in time, we're talking about a greatly reduced crime . . . [from burglary to breaking and entering in the nighttime]."

When this statement is read in context, we derive a quite different impression. The judge was rightly troubled by certain aggravating factors accompanying the breaking and entering, most prominently the early hour of the morning and the fact that the mother and her two daughters were alone at home, the latter fact being known to the defendant. We see the judge's statement as being an articulation of this concern, which was a concern highly relevant to the sentencing determination. We can detect no impropriety in the judge's mention of the reduction of the charge in this context.

We similarly find no merit in the defendant's objection based upon remarks made by the judge after he asked the defendant the question: "What is there that you can tell me, Mr. Burke, if anything, that would mitigate the circumstances that I find myself confronted with here?"[4] The defendnat argues, on the basis of this exchange, that the judge in effect decided to punish the defendant with a longer sentence on account of a perception that his answers to the judge's questions were untrue. We disagree. We see this discussion as being no more than an effort by the judge to explore whether any factors existed to mitigate the defendant's guilt. This is quite unlike cases where a judge has improperly threatened to punish a defendant if he did not confess his guilt. See, e.g., *LeBlanc* v. *United States,* 391 F.2d 916 (1st Cir 1968); *Thomas* v. *United States,* 368 F.2d 941 (5th Cir. 1966). On the record, there was no impropriety by the judge in his determination of the defendant's sentence.

The judgment of the District Court is affirmed.

*So ordered.*

---

[4] After some conversation, the judge went on to press the defendant for more specific information:

THE JUDGE: "Well, why did you feel it necessary to break into the house?"
THE DEFENDANT: "I didn't break into the house."
THE JUDGE: "Well, the windows were broken, there was a pry bar that was inserted into the sash. Who did that?"
THE DEFENDANT: "I have no idea. I —"
THE JUDGE: "The Jury has said you did. As far as this Court is concerned, you did."