## COMMONWEALTH *vs.* WILLIAM COTTO.

No. 99-P-928.

Suffolk. April 5, 2001. - August 2, 2001.

Present: JACOBS, LENK, & KANTROWITZ, JJ.

*Burglary. Breaking and Entering. Statute,* Construction. *Infernal Machine. Practice, Criminal,* Instructions to jury, Severance.

This court concluded that, for the purposes of the burglary statutes, G. L. c. 266, §§ 14, 15, and 16, an entering has occurred when any part of the defendant's body, or an instrument that is intended for use in the commission of a felony therein, crosses the threshold of a dwelling house. [227-230]

At the trial of an indictment charging breaking and entering in which identification was the only live issue, the judge's erroneous instructions to the jury on the element of entry were not prejudicial. [230]

A criminal defendant did not demonstrate that the joinder for trial of two sets of indictments resulted in undue prejudice. [230-231]

INDICTMENTS found and returned in the Superior Court Department on February 27 and May 5, 1997, respectively.

The case was tried before *Charles F. Barrett,* J.

*James L. Rogal* for the defendant.

*Amanda Lovell,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. This case presents the novel issue of whether an entering has occurred, for purposes of the burglary statutes,[1] if one[2] breaks a window and then throws an infernal device through the opening. We conclude that an entering has occurred.

*Background.* The defendant, William Cotto, was charged in two sets of indictments based on two separate incidents. The January 4, 1997, charges consisted of assault with intent to

---

[1] General Laws c. 266, §§ 14 (armed burglary of a dwelling), 15 (unarmed burglary of a dwelling), and 16 (breaking and entering).

[2] Either individually or in concert with another.

murder Shirley Suarez while armed with a flammable liquid, G. L. c. 265, § 18(b); breaking and entering in the nighttime with intent to commit murder, G. L. c. 266, § 15; and arson, G. L. c. 266, § 1. The January 10, 1997,[3] charges included assault against Nilsa Wong by means of a dangerous weapon, a baseball bat, G. L. c. 265, § 15(b); and kidnapping Wong, G. L. c. 265, § 26.

After his conviction on all counts, Cotto now appeals, claiming that the judge (1) provided the jury with erroneous instructions on the breaking and entering count; and (2) abused his discretion by joining the two sets of indictments for trial. For the reasons set forth below, we affirm.

*Facts.* The Commonwealth sought to prove that the events of January 4 and 10 were connected, stemming from an ongoing feud between the defendant's family and Francisco Martinez. The jury could have found these facts.

On September 15, 1996, Francisco Martinez was allegedly shot in the abdomen by Garribel Bautista,[4] the defendant's brother. On January 3, 1997, at nine in the evening, the alleged shooter, Bautista, was found lying in a road in Milton, beaten, stabbed, and gagged. Hours later, shortly after midnight, the defendant and two others set fire to Martinez's apartment.

Shirley Suarez, who was staying at Martinez's apartment that evening, heard glass breaking. Going into the living room to investigate, she saw a white plastic bottle being thrown through the broken window. It was later determined that the bottle contained gasoline, and that it caused a fire in the apartment.

Frightened, she ran to the back door and saw three people outside the apartment. She recognized the defendant as one of the group of three vandals. She then ran upstairs to warn the other tenants. She heard the fire alarm go off and smelled smoke. The fire department was summoned. Ultimately, the damage to the apartment consisted of the walls of the living room and bedroom being completely covered with soot; the heat from the fire caused children's plastic toys to melt in the bedroom.

---

[3] The date of the incident is listed as "January 10 or 11, 1997." For the sake of clarity, the January 10 date is used.

[4] Bautista is also known as Carlos Ivan Hernandez. While a warrant was issued for his arrest, the record indicates that he was never arrested.

Not content with that evening's mischief, one week later the defendant kidnapped Nilsa Wong, Martinez's girlfriend. During the kidnapping, the defendant demanded to know the whereabouts of Martinez and threatened Wong with a baseball bat, stating that he should beat her "to leave Francisco Martinez another message." He also told Wong that he had set fire to Martinez's apartment.

*The entering.* The defendant argues that the trial judge erred by instructing the jury that an entry occurs when an instrument or weapon controlled by the defendant physically enters the dwelling. He urges us to hold that an entry by instrument can only be found where the instrument is being used, not only to commit the felony within, but also as the means of committing the break.

Here, it is evident that the window was broken, by either the defendant or one of his two cohorts.[5] The precise manner in which it was broken is unknown. The sole evidence of entry consisted of the infernal device[6] being thrown into the living room through the broken window. We must now decide whether an entry for the purpose of the burglary statutes occurs when an instrument, used to commit the felony therein,[7] crosses the threshold.

Burglary is an offense against property. See Nolan & Henry, Criminal Law § 401, at 299 (2d ed. 1988). "It is the purpose of burglary statutes . . . to prohibit that conduct which violates a person's right of security in a place universally associated with refuge and safety, the dwelling house." *Commonwealth* v. *Goldoff*, 24 Mass. App. Ct. 458, 462 (1987). "By not defining the term [entering] in the burglary statutes, the Legislature is presumed to have intended to incorporate the common law definition of that phrase, at least in so far as it is not inconsistent with the terms or the purpose of the statute." *Commonwealth* v. *Ricardo*, 26 Mass. App. Ct. 345, 356 (1988) (internal quotations

---

[5]Suarez heard the glass break, but did not see who broke it.

[6]An infernal device or machine is defined as "includ[ing] any device for endangering life or doing unusual damage to property, or both, by fire or explosion, whether or not contrived to ignite or explode automatically and whether or not disguised so as to appear harmless." G. L. c. 266, § 102A.

[7]The felony intended in this case was murder.

omitted). See *Commonwealth* v. *Colon*, 431 Mass. 188, 191 (2000).

"[T]here must be both a *breaking* and an *entering* to constitute the crime of burglary. They are distinct and separate acts." *Rex* v. *Hughes*, 1 Leach 406, 406 (1785) (emphasis in the original). At common law, "any intrusion into a protected enclosure by any part of a defendant's body was enough to satisfy the legal requirement of entry." *Commonwealth* v. *Burke*, 392 Mass. 688, 690 (1984), citing *Rex* v. *Bailey*, Russ & Ry. 341 (1818); *Rex* v. *Davis*, Russ & Ry. 499 (1823); *Commonwealth* v. *Glover*, 111 Mass. 395 (1873).[8]

In cases where only an instrument crossed the threshold of the dwelling house, there is no entry where the instrument was only used for the breaking. See *Rex* v. *Hughes*, 1 Leach at 407. However, where the instrument is used to commit the felony within, there is an entry. See *ibid.* "And in those cases where an instrument has formed any part of the question, it has always been taken to mean, not the instrument by which the breaking was made, but the instrument, as a hook, a fork, or other thing by which the property was capable of being removed." *Ibid.*[9] See *Burke, supra* at 692.

This view is in conformity with a majority of jurisdictions, which has held that an entry can occur if an instrument, "being used to commit the felony intended," passes the line of the threshold, regardless of whether the instrument was used in the breaking. 3 Torcia, Wharton's Criminal Law § 323 (15th ed. 1995). See Nolan & Henry, Criminal Law § 403; Perkins & Boyce, Criminal Law 254 (3d ed. 1982) ("[W]here a tool or other instrument is intruded, without any part of the person being within the house, it is an entry if the insertion was for the

---

[8] "It is well settled that it is a sufficient entry 'when the thief breaketh the house, and his body, or any part thereof, as his foot or his arm, is within any part of the house.' " *Burke, supra* at 690-691, quoting from *Glover, supra* at 402. See *Commonwealth* v. *Lewis*, 346 Mass. 373, 377 (1963), cert. denied, 376 U.S. 933 (1964).

[9] "[N]either Coke, Blackstone, nor Hale make the distinction, though it might be implied from their examples. [Hawkins] queries whether this is not the proper distinction, and [East] states that such is the law though it was not mentioned in the earlier writings." 3 LaFave & Scott, Substantive Criminal Law § 8.13, at 467 n.35 (1986), citing 1 Hawkins, Pleas of the Crown 161-162 (1787), and 2 East, Pleas of the Crown 490 (1803).

purpose of completing the felony but not if it was merely to accomplish a breaking").[10] See *State* v. *Ison*, 744 P.2d 416, 418-419 (Alaska Ct. App. 1987); *State* v. *Johnson*, 587 S.W.2d 636, 638 (Mo. Ct. App. 1979).

A minority of jurisdictions hold that an entry can occur if any instrument, whether or not intended for use to commit a felony, crosses the threshold. See *People* v. *Davis*, 18 Cal. 4th 712, 717 (1998); *Hebron* v. *State*, 331 Md. 219, 237-238 (1993); *State* v. *Tixier*, 89 N.M. 297, 298-99 (Ct. App. 1976).[11]

Today we agree with the majority of jurisdictions and hold that an entry occurs when any part of the defendant's body, or an instrument which is used to commit the intended felony, crosses the threshold. We so hold because "[b]y permitting an instrumental entry to satisfy this element of the offense only when the instrument is to be used in connection with the ulterior crime, we properly differentiate between attempted burglary, burglary, and the commission of the ultimate [crime]." *State* v. *Ison*, 744 P.2d at 419.[12]

The position we adopt differentiates between breaking and entering and an attempt to break and enter. For example, assume in the case at bar that the defendant had broken the window, but upon seeing Suarez, dropped the infernal device and ran. In this scenario, he may be found guilty of attempted

---

[10]The origin of the distinction between entry of an instrument and a body part was due to the "ancient style of lock and key [where the key, when inserted,] went entirely through and extended a fraction of an inch on the other side. And the special rule in regard to a tool or instrument was developed to insure that the mere insertion of the key would not be held sufficient to complete the burglary." Perkins & Boyce, Criminal Law 254.

[11]Other jurisdictions appear to hold to a more conservative view, finding an entry only where the instrument which crosses the threshold is also used to break into the premises. See *Walker* v. *State*, 63 Ala. 49, 51-52 (1879).

[12]"Whether the insertion of an instrument or tool is sufficient (without any part of the body entering) seems to depend upon the purpose for which it is inserted. If the tool is inserted simply to accomplish the breaking, there is no entering for purposes of burglary; but, if the tool or instrument is inserted to accomplish the felony, the insertion is sufficient for the requirement of entering. If a bullet is fired for purpose of breaking the lock, though the bullet lands inside, it would probably not constitute a burglarious entering if fired solely to break the lock. If fired to kill a person inside, probably an entering could be found." Nolan & Henry, Criminal Law § 403 (footnotes omitted).

breaking and entering as well as attempted arson, but not of arson or breaking and entering.[13]

We turn to the actual instructions given in this case. The trial judge stated: "An entry is the unlawful making of one's way into a dwelling house of another. Entry occurs if any part of the defendant's body, even a hand or foot or any instrument or weapon controlled by the defendant, physically enters the dwelling house." The judge failed to state that, in the unusual facts of this case, entry can be found only where the instrument that entered is intended for use in the commission of the felony within.[14]

However, the error was harmless. There was no dispute at trial that the container thrown into the apartment contained an accelerant and that it was the cause of the fire. Since this was not a live issue at trial (the only issue at trial was identification), there was no prejudice to the defendant. See *Commonwealth* v. *Gagnon*, 430 Mass. 348, 350 (1999) ("where the identity of the killer is the only live issue at trial, any error in the malice instruction is not prejudicial because the defendant's state of mind is not in dispute. The issue is the identity of the perpetrator").

*Joinder.* The defendant argues that he did not receive a fair trial as a result of the joinder for trial of the two sets of indictments — the arson, breaking and entering, and assault with intent to murder counts (the January 4 indictments), with the kidnapping and assault by means of a dangerous weapon charges (the January 10 indictments).

Rule 9(a)(3) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 859 (1979), provides that "[i]f a defendant is charged with two or more related offenses . . . [t]he trial judge shall join the charges for trial unless he determines that joinder is not in the best interests of justice." The decision is left to the sound discretion of the trial judge. See *Com-*

---

[13]See *Commonwealth* v. *Reynolds*, 10 Mass. App. Ct. 830 (1980), wherein the defendant's conviction for attempted breaking and entering with intent to commit a felony was affirmed on evidence, in part, of a rock being thrown through the window of a pharmacy during the nighttime.

[14]Given the unusual nature of the fact scenario in this case, a judge would have to add this proviso in instructing the jury only on rare occasions.

*monwealth* v. *Wilson*, 427 Mass. 336, 345 (1998). "The defendant bears the burden of showing that joinder was improper." *Ibid.*

Offenses are related when "they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." Mass.R.Crim.P. 9(a)(1), 378 Mass. 859 (1979). See *Commonwealth* v. *Mamay*, 407 Mass. 412, 416 (1990). Whether the joinder of the charges resulted in undue prejudice "turns, in large measure, on whether evidence of the defendant's other offenses would have been admissible at a separate trial on each set of indictments." *Wilson*, *supra* at 346.

Here, the defendant's motive for the January 4 arson and the January 10 kidnapping was to exact revenge on Martinez. The defendant's confession to Nilsa Wong on January 10, that he burned Martinez's apartment, would have been admissible in a severed trial on the January 4 indictments. Similarly, evidence about the January 4 arson would have been admissible in a severed trial on the January 10 indictments to put the defendant's statements in context and to prove the defendant's motive.[15] There was no abuse of discretion. See *id.* at 346-347.

*Judgments affirmed.*

---

[15]This is not to intimate that if evidence is cross-admissible, joinder is mandatory. A trial judge should always consider whether joinder is in the best interests of justice. Mass.R.Crim.P. 9(a)(3) & (d). See *Commonwealth* v. *Jacobs*, *ante* 38, 44 n.12 (2001).