The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Jeffrey David GONYEA, Defendant–Appellant.

No. 06CA0581.

Colorado Court of Appeals, Div. II.

Oct. 2, 2008.

John W. Suthers, Attorney General, Melissa D. Allen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Leslie A. Goldstein, LLC, Leslie A. Goldstein, Steamboat Springs, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Jeffrey David Gonyea, appeals the judgment of conviction entered on jury verdicts finding him guilty of second degree burglary of a building and possession of burglary tools. He also appeals his sentence. We affirm.

### I. Request for New Counsel

██ Gonyea first contends that the trial court erred in not dismissing his public defender and appointing new counsel. We do not agree.

We review a trial court's decision to deny an indigent defendant's request for substitution of counsel under an abuse of discretion standard. *People v. Garcia,* 64 P.3d 857, 863 (Colo.App.2002); *People v. Apodaca,* 998 P.2d 25, 28 (Colo.App.1999) (a defendant's motion to discharge an attorney and an attorney's motion to withdraw are generally addressed to the sound discretion of the trial court).

About five months before trial, Gonyea expressed concerns about his public defender and asked for private counsel. Specifically, he claimed that his attorney had not communicated with him and had not shown him discovery. His concerns appear to have arisen primarily out of another case in which

Gonyea was represented by the same attorney. The court discerned no ethical conflict or other legal basis requiring withdrawal of the public defender and noted that the public defender did not agree that sufficient conflict existed to warrant withdrawal. When presented with the option of proceeding pro se, Gonyea elected to continue with representation by the public defender.

At a hearing approximately one month later, Gonyea and counsel indicated that they continued to have communication problems, again arising primarily in connection with Gonyea's other case, which was rapidly approaching trial. Defense counsel indicated that when she had last met with Gonyea, he walked out of the room. Further, Gonyea had advised her that he would communicate with her only in writing. Defense counsel then expressed her concern regarding the deterioration of their relationship as follows:

> At this point, [Gonyea] is making it impossible for me to represent him and prepare for trial. This is something that I believe is very deliberate on [Gonyea's] part. He refuses to communicate with me in person, but takes every opportunity he can to write to the Court and to anyone else that he can about how ineffective that I am for him. I have discussed with [him] the fact that his refusal to communicate with me leaves him in a position where he may not be afforded counsel at all.
>
> He is set for trial [on the other case in about a month.] I am not going to be prepared for that trial.

The court again gave Gonyea the option of proceeding pro se, and he again elected to continue representation by his public defender. At a hearing held approximately one week later, defense counsel indicated that Gonyea had resolved his issues with her representation.

■ When an indigent criminal defendant voices objections to court-appointed counsel, the court must inquire into the matter. If the defendant establishes good cause, such as a conflict of interest or a complete breakdown of communication, the court must appoint substitute counsel. *See People v. Arguello*, 772 P.2d 87, 94 (Colo.1989). If, however, the court has a reasonable ba-

sis for concluding that the attorney-client relationship has not deteriorated to the point where counsel is unable to give effective assistance, the court is justified in refusing to appoint new counsel. *People v. Schultheis*, 638 P.2d 8, 15 (Colo.1981).

■■ In deciding whether to appoint substitute counsel, the court may consider the timing of the request, inconvenience to witnesses, and the possibility that any new counsel will be confronted with similar difficulties. *People v. Rubanowitz*, 688 P.2d 231, 243 (Colo.1984). If the court determines that substitution is not warranted, it may insist that the defendant choose either to appear pro se or to continue representation by existing counsel. *Apodaca*, 998 P.2d at 28.

Here, contrary to Gonyea's assertion, the record indicates that the trial court made sufficient inquiries into the basis for the problems, allowing both Gonyea and his counsel to speak on the matter. These discussions revealed that his complaints about not seeing discovery concerned his other case. It also became apparent that Gonyea's own actions had contributed to the conflict. Further, the record does not indicate that there was a complete breakdown of communication between Gonyea and his counsel. Rather, the record demonstrates that, despite Gonyea's concerns, Gonyea and his attorney agreed to resolve their differences and he chose to cooperate with counsel.

Finally, to the extent the alleged conflict between Gonyea and the public defender amounted to a disagreement over strategy, this would not be a "well founded reason" for believing that the appointed attorney could not competently represent Gonyea. *Arguello*, 772 P.2d at 94.

Under these circumstances, we conclude that the trial court did not abuse its discretion in declining to dismiss the public defender and appoint substitute counsel to represent Gonyea.

## II. Jury Instruction

■ Gonyea next contends that the trial court improperly instructed the jury regarding what constitutes entry of a premises as it

pertains to the "unlawfully enters or remains" element of the second degree burglary charge. We disagree.

Section 18–4–203(1), C.R.S.2008, provides that "[a] person commits second degree burglary, if the person knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully . . . in a building or occupied structure with intent to commit therein a crime against another person or property." A person "enters unlawfully" or "remains unlawfully" in or upon premises when "the person is not licensed, invited, or otherwise privileged to do so." § 18–4–201(3), C.R.S. 2008.

The elemental instruction given here defined second degree burglary as follows:

1. That the defendant;
2. in the State of Colorado, at or about the date and place charged,
3. knowingly,
4. unlawfully broke an entrance into, entered or remained in a building or occupied structure
5. with intent to commit therein the crime of theft.

The trial court defined the phrase "unlawfully enters or remains" to refer to "a person who enters or remains in or upon premises when he is not licensed, invited, or otherwise privileged to do so. *The intrusion of any body part into the prohibited premises is sufficient to constitute entry.*" (Emphasis added.)

The charges against Gonyea arose out of allegations that he broke into a restaurant by removing a piece of cardboard that had been duct-taped over a broken window, and unlocking, briefly opening, and then closing the back door. His actions triggered a silent alarm and police arrived less than two minutes later, finding him at the back door, one of his hands near the door, and wearing a black glove.

We initially note that, while not mentioned by the parties on appeal, it appears that the evidence could have led the jury to convict Gonyea on the basis that he "broke an entrance" into the restaurant. During its closing argument, the prosecution asserted that Gonyea, by pulling the cardboard away, was "breaking" to "help gain entrance." However, the theme of the closing arguments was whether Gonyea made entry into the restaurant when he reached inside the window and opened the door. Under these circumstances, we cannot conclude that the jury did not consider the definition of "entry" as including intrusion of "any body part," and therefore, we address Gonyea's contention that the instruction erroneously defined the term.

Gonyea maintained at trial, and maintains here on appeal, that there was no Colorado case law to support the assertion that intrusion of a body part into the premises was sufficient to constitute an unlawful entry. He also asserts that the evidence showed that any intrusion into the restaurant lasted for no more than two seconds, and that only his hand entered the restaurant. He therefore asserts that the jury wrongly convicted him based on its erroneous understanding of the term "entry."

The trial court has substantial discretion in formulating jury instructions so long as they are correct statements of the law and fairly and adequately cover the issues presented. *People v. Warren,* 55 P.3d 809, 816 (Colo.App.2002); *People v. Williams,* 23 P.3d 1229, 1232 (Colo.App. 2000). Reversible error occurs when the language of an instruction creates the reasonable possibility that the jury could have been misled in reaching a verdict. *People v. Pahl,* 169 P.3d 169, 183 (Colo.App.2006). A conviction will not be reversed on a claimed deficiency in a jury instruction if the instructions, read as a whole, adequately inform the jury of the law. *See People v. Vanrees,* 125 P.3d 403, 410 (Colo.2005); *People v. Pahl,* 169 P.3d at 183.

Gonyea does not cite any authority to support his proposition that intrusion of a body part is insufficient to demonstrate unlawful entry onto premises.

By contrast, the People rely on *People v. Gomez,* 189 Colo. 91, 94, 537 P.2d 297, 299 (1975), as support for the instruction. There, police responded to an alarm at a liquor store and observed an individual standing in front of a broken store window. The individual's

fingerprint was located on a carton which could only have been touched by a person reaching in through the broken window. The supreme court noted that the fingerprint evidence demonstrated proof of entry into the liquor store. *Id.* Thus, the court's holding implied that merely reaching a hand inside the store window was sufficient to constitute entry into the store.

The implication the People drew from *Gomez* is consistent with the great weight of authority in other jurisdictions. *See* Charles E. Torcia, *Wharton's Criminal Law* § 322 (15th ed.1995) ("[t]here is an entry when any part of the defendant's person passes the line of the threshold"); *People v. Valencia*, 28 Cal.4th 1, 13, 120 Cal.Rptr.2d 131, 46 P.3d 920, 927 (2002) ("it has long been settled" that any kind of entry, complete or partial, is sufficient to constitute entry); *Polk v. State*, 825 So.2d 478, 480 (Fla.Dist.Ct.App.2002) (defendant "entered" dwelling under burglary statute when he put his hand inside a broken window); *State v. Keopasaeuth*, 645 N.W.2d 637, 641 (Iowa 2002) ("entry" has been defined as "entering a structure with any part of the body," even if a person merely breaks the plane of the threshold of the structure); *State v. Crossman*, 790 A.2d 603, 606–07 (Me.2002) (inference that in his efforts to remove the door, some part of defendant's body intruded into the home, was sufficient to support finding of entry); *Commonwealth v. Cotto*, 52 Mass.App.Ct. 225, 227, 752 N.E.2d 768, 770 (2001) (evidence that window was broken and item thrown into living room was sufficient entry for purposes of burglary statutes); *State v. Bumgarner*, 147 N.C.App. 409, 415, 556 S.E.2d 324, 329 (2001) (evidence that defendant stood on a chair and removed the screen from victim's window was sufficient to satisfy the elements of attempted first degree burglary); *State v. Fernandes*, 783 A.2d 913, 916 (R.I.2001) (use of arm as a barrier to prevent the victim from closing the interior door to his home and thereafter by extending his arm into the victim's home to grab victim was sufficient for "entry"); *Ortega v. State*, 626 S.W.2d 746, 747 (Tex.Crim.App.1981) (entry into that part of the house between the screen door and the wooden door with

dead bolt lock sufficient to constitute an "entry").

It has been reasoned that entry of even a body part "violates the occupant's possessory interest in the building" and threatens "the germination of a situation dangerous to personal safety." *Valencia*, 28 Cal.4th at 13, 120 Cal.Rptr.2d 131, 46 P.3d at 927; *see also People v. Nible*, 200 Cal.App.3d 838, 845, 247 Cal.Rptr. 396, 399 (1988) (opening even a screen door or window is deemed burglarious because occupants rely on doors and windows for protection; to open such a door or window is a violation of the security of the dwelling).

Given the evidentiary dispute in this case concerning whether an entry into the premises was made, some instruction defining the concept of unlawful entry under the statute was appropriate. *See People v. Benton*, 829 P.2d 451, 453 (Colo.App.1991) (instruction defining term was warranted by the evidence). Further, the instruction here was a correct statement of the law. Accordingly, we perceive no error.

### III. Proportionality

Gonyea next contends that the trial court erred in not concluding that the sentence he received was grossly disproportionate to the severity of the crimes committed and therefore constituted cruel and unusual punishment. We disagree.

After the jury found Gonyea guilty of the substantive crimes, the trial court found him guilty of seven habitual criminal counts. Gonyea was sentenced to twenty-four years in prison.

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment and includes a principle of proportionality requiring that the sentence fit the crime. *People v. Deroulet*, 48 P.3d 520, 523 (Colo.2002). Reviewing courts must, however, grant substantial deference to the broad authority of the General Assembly to determine punishments for crimes. Therefore, outside the context of capital punishment, a successful challenge to the proportionality of a particular sentence is

exceedingly rare. *Alvarez v. People,* 797 P.2d 37, 39 (Colo.1990).

On appeal, we review proportionality determinations de novo. *People v. Medina,* 926 P.2d 149 (Colo.App.1996); *see also People v. Gaskins,* 825 P.2d 30, 36–37 (Colo.1992) (where an extended proportionality review is unnecessary, an appellate court is as well positioned as the trial court to conduct the review).

When a defendant challenges a sentence on proportionality grounds, the court must grant an abbreviated proportionality review, which involves comparing the gravity of the offense and the severity of the punishment. *Deroulet,* 48 P.3d at 524. Only when an abbreviated proportionality review gives rise to an inference of gross disproportionality does a court need to engage in an extended review. *Close v. People,* 48 P.3d 528, 538 (Colo.2002).

When conducting an abbreviated proportionality review of a sentence under the habitual criminal statute, a court must scrutinize the offenses in question together to determine whether they are so lacking in gravity or seriousness as to suggest the sentence is grossly disproportionate. Among the crimes that are considered grave or serious as a matter of law are burglary, aggravated robbery, and robbery. *Id.* When a crime is considered grave or serious, it is highly likely that the legislatively mandated sentence for that crime will be considered constitutionally proportionate. Thus, in such a case, the court may proceed directly to the second subpart of an abbreviated proportionality review, which is a consideration of the harshness of the penalty. *Id.*

Here, Gonyea alleges that his sentence of twenty-four years was disproportionate and excessive because he only entered the building momentarily with his hand, because no physical violence was committed in the course of the crime, and because he has no history of violent offenses. We disagree.

Gonyea was convicted of two substantive felony counts and seven habitual counts.

One of the substantive counts concerned burglary, which the supreme court has designated as grave or serious, finding it to "involve violence or potential for violence by [its] very nature." *Gaskins,* 825 P.2d at 37; *see Deroulet,* 48 P.3d at 524.

In addition, of the seven prior convictions underlying the habitual criminal adjudication, three were counts of burglary. In finding the sentence proportionate, the trial court also noted that Gonyea had a long criminal history, which included convictions for theft and criminal trespass.

Because one of the primary counts is considered grave or serious and we conclude that three of the habitual counts are grave and serious, we conclude Gonyea's sentence is not grossly disproportionate, that an abbreviated review was appropriate, and that his sentence did not constitute cruel and unusual punishment. *See People v. Cisneros,* 855 P.2d 822, 829–30 (Colo.1993) (where defendant was convicted of burglary and theft, and the offenses underlying his adjudication as a habitual offender included three burglary offenses and one receipt of stolen property conviction, a life sentence with eligibility for parole after forty years was not disproportionate); *Alvarez,* 797 P.2d at 42 (where defendant's triggering offenses included aggravated robbery, theft, and conspiracy to commit aggravated robbery and theft, and his prior convictions were for second degree burglary, criminal attempt to commit theft, first degree criminal trespass, and criminal attempt to commit second degree burglary, a life sentence was not disproportionate).

The judgment and sentence are affirmed.

Judge CARPARELLI and Judge CONNELLY concur.