COMMONWEALTH *vs.* BENJAMIN F. TILLEY.

Norfolk.    March 4, 1969. — April 2, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Breaking and Entering.*

At the trial of an indictment for breaking and entering a dwelling in
the day time with intent to commit larcency, a finding that there
was a breaking as well as an entry by the defendant was warranted
by evidence that a son of the owner of the dwelling discovered the
defendant and a confederate in the house shortly after the owner left
it with both doors locked, that the son found the rear wooden door
open and screen door shut, and that as the son approached the front
door to enter he heard the rear door bell ring a number of times in rapid
succession, although there was no evidence that the rear door was
forced or as to the condition of the windows.

INDICTMENT found and returned on February 2, 1968,
charging that the defendant "in the day time, did break
and enter . . . the dwelling house of Kathleen Dolan, with
intent therein to commit larceny."

The case was heard in the Superior Court by *Vallely,* J.,
without jury.

*Julius H. Soble* for the defendant.

*Richard W. Barry,* Assistant District Attorney, for the
Commonwealth.

WHITTEMORE, J.    The issue on Tilley's exceptions is
whether there was evidence to permit the judge who sat
without a jury to find that Tilley on August 16, 1967, "did
break" as well as enter Kathleen Dolan's dwelling house.
There was evidence that Tilley was discovered with Stephen
Roukas in the house about 11:15 A.M. by Walter C. Dolan,
son of the owner, and that Mrs. Dolan had left the house
about 10:45 A.M. with both front and rear doors locked.
Walter Dolan entered by unlocking the front door.  He saw
Roukas descending the stairs from the second floor.  He
chased Roukas into the dining room and saw Tilley in the

rear vestibule where the rear wooden door was open and the screen door was closed. Tilley pushed open the screen door, ran out and was pursued and caught by Dolan. As Dolan had approached the front door before entering he had heard the rear bell ring about twenty times in rapid succession. There was no evidence whether the windows of the house were open or had screens. There was no evidence that the rear lock was forced, or how the lock operated, or that any lock-slipping device was found. The proof thus did not foreclose the possibility that entrance had been through an open window.

"In this Commonwealth the opening of a closed but unlocked door or window is a breaking. . . . But passing through an unobstructed entrance is not." *Commonwealth* v. *Lewis*, 346 Mass. 373, 377. We think that the judge could infer that the entry of the intruders had not been through an unobstructed entrance. Mrs. Dolan's testimony that she had made sure that both doors were locked warranted the inference that she had intended to secure the house against entrance by intruders, and was not likely to have left any accessible window in such state that it could be used for entering without moving a screen or the window sash. Further it was likely that even if one intruder had gone in through a window the other had entered through the back door opened by his confederate. Also, from the ringing of the outside back door bell and Tilley's presence in the house soon thereafter, it could be inferred that he had just entered or reëntered through the door that had previously been opened by him or Roukas.

The reasonable inference was that for the intruders to enter in the course of their joint enterprise one or both had moved to a material degree something that barred the way. This, we rule, was a breaking. See the *Lewis* case, *supra*. Compare *Commonwealth* v. *Domanski*, 332 Mass. 66, 76–77 (door found open with its lock broken). See also *Commonwealth* v. *O'Brien*, 305 Mass. 393, 401 (a material fact may be inferred, even though it is not a necessary inference). We hold that the Commonwealth was not obliged to prove

that all windows were closed or locked.  We do not follow the contrary indications of *Commonwealth* v. *Stephenson,* 8 Pick. 354, and *Commonwealth* v. *Strupney,* 105 Mass. 588, or the holding of the latter case that it is not a breaking to push up a partly raised sash.  Further, although it is not essential for our decision, we think that entry through an open window not apparently intended, or useable in due course, as a means of entry is within the intent of the statute. The security of the house in such a case is at least as much invaded as when a closed unlocked door is opened.

There is nothing in Tilley's suggestion that the Commonwealth was bound to show that the door had not been left open by someone else who had entered in the interval after Mrs. Dolan had left the house.

We do not reach the point made by the Commonwealth that the breaking out through the screen door was sufficient evidence of a break to support the charge.  See *State* v. *Kohlfuss,* 152 Conn. 625, 638–639; *Lawson* v. *Commonwealth,* 160 Ky. 180, 183–184.

*Exceptions overruled.*