COMMONWEALTH *vs.* ALFRED L. LABARE
(and a companion case[1]).

Hampshire. December 4, 1980. — February 13, 1981.

Present: HALE, C.J., CUTTER, & KASS, JJ.

*Burglary. Breaking and Entering. Words,* "Break."

The word "breaks" as it appears in G. L. c. 266, § 14, has the common law meaning which includes the doctrine of "constructive breaking." [372-378]

INDICTMENTS found and returned in the Superior Court Department on June 28, 1979.

The cases were tried before *Moriarty, J.*

*Margaret H. Van Deusen* (*William J. Leahy* with her) for David Tatro.

*Robert T. Doyle, Jr.,* for Alfred L. Labare.

*Brian Blackburn* (*Stephen R. Kaplan,* Assistant District Attorney, with him) for the Commonwealth.

CUTTER, J. Labare and his codefendant Tatro were convicted on indictments charging (1) breaking and entering a dwelling in the nighttime with intent to commit a felony, armed robbery (i.e., armed burglary under G. L. c. 266, § 14[2]); (2) assault and battery by means of a dangerous

---

[1] Commonwealth *vs.* David Tatro.

[2] Section 14 (as amended by St. 1966, c. 330) reads: "Whoever *breaks and enters* a dwelling house in the night time, with intent to commit a felony, or whoever, after having entered with such intent, breaks such dwelling house in the night time, any person being then lawfully therein, and the offender being armed with a dangerous weapon at the time of such breaking or entry, or so arming himself in such house, or making an actual assault on a person lawfully therein, shall be punished by imprisonment in the state prison for life or for any term of not less than ten years."

weapon; and (3) attempted armed robbery and assault while masked. Each of them objected (a) to the failure of the trial judge at their trial on November 7 through 9, 1979, to enter a required finding of not guilty (Mass. R. Crim. P. 25 [1979], 378 Mass. 896 [1979]), and (b) to a portion of the judge's charge. See note 3, *infra*. Each objection related only to the indictment under § 14. Labare and Tatro were each sentenced to a term of not more than twelve years nor less than ten years on the armed burglary charge. From these sentences they each appealed.

From the somewhat confused evidence, the jury could have made the following findings. On the evening of May 24, 1979, Labare, Tatro, Donald Pierce, and Barry Woodward were drinking in a bar. In the late evening, they all went to Pierce's house in Warren. One of them had learned that one Richard Albert had sold his automobile that day and had about $1,500 in his possession. On Tatro's suggestion, the four "decided to go over . . . and hit" Albert. They "got a knife" and cut up four nylon stockings to be used as masks. The four in the early morning hours then left for Albert's apartment in Ware. Linda LaPlante and her two sons lived in Albert's apartment. Because Albert and LaPlante knew Tatro and Pierce, the latter two remained at the bottom of the stairs leading to the apartment. Labare and Woodward, wearing the stocking masks, went upstairs. Woodward knocked on the door and kept knocking when there was no answer.

LaPlante had been asleep when she heard the knocking. She asked, "Who is it?" The answer was, "Al." LaPlante asked, "Al who?", which was answered "Allen." LaPlante then said, "Allen who? I'm not going to answer this door until you tell me who." "[S]omeone in the background" said, "Gerry." LaPlante testified that "I had a brother [named] Gerry, so I opened the door."

---

The sentence imposed upon a person who, after being convicted of any offence mentioned in this section, commits the like offence, or any other of the offences therein mentioned, shall not be suspended, nor shall he be placed on probation" (emphasis supplied).

Woodward and Labare then "pushed . . . [their] way in." Labare "put the knife to . . . [LaPlante's] stomach and she started to scream, called to her boyfriend," Albert. Labare then "went in the bedroom where her boyfriend was," and told Albert, "I want the money." Albert, by then also armed with a knife, said he "didn't have any." At this point, LaPlante managed to "push" Woodward out the door. She locked him out, leaving Labare locked inside. She then ran to the back door and screamed to a neighbor to call the police.

Woodward joined Tatro and Pierce. The three ran across the street, and one of Albert's neighbors chased them out of his yard. Tatro told Woodward to go back and get Labare. The three separated, but were soon apprehended together by the Ware police near Tatro's parked automobile.

At some point, Labare also left the apartment. A police officer later saw Labare running down a street nearby, staggering, and thought Labare was drunk. The officer found a "dagger" and a "knife" in Labare's pocket.

The defendants (by their objections to the denial of a required finding and to the charge) present really only a single issue, viz., whether, on the essentially undisputed facts, there was a "breaking" of the apartment within the meaning of G. L. c. 266, § 14 (n.1). The defendants contend that what is sometimes referred to by the text writers as a "constructive breaking" has not been a part of the law of Massachusetts. We do not agree.

The portion of the trial judge's charge to which objection was made appears in the margin.[3] The trial transcript in-

---

[3] The charge relating to "constructive breaking" reads: "Now the term breaking and entering . . . has a technical meaning. To constitute a breaking it's not necessary that a door or window be forced or actually smashed or broken in any way . . . . It's sufficient if a closed door or window is opened, even though that door or window is unlocked. Just opened by someone unauthorized to do so is a breaking within the meaning of the law . : . . [T]here was no evidence that . . . Labare, or any defendant, actually opened any door or any window in order to gain access to the apartment. The evidence most favorable to the Commonwealth . . . is that in response to some language that was uttered out-

dicates that the judge thought that a "constructive breaking" constituted a "breaking" within the meaning of § 14 (note 1, *supra*), and that this view appears to be at least one reason for his denying the motion for a required finding of not guilty.

The Massachusetts case closest to the present one is *Commonwealth* v. *Lowrey*, 158 Mass. 18 (1893), an opinion by Mr. Justice Holmes. In that case, one count of an indictment charged two defendants with breaking and entering a building and stealing therein. Lowrey's codefendant, Johnson, "in pursuance of a preconcerted scheme" made "a pretense of a wish to purchase an article," and persuaded the night clerk of a drug store "to let him into the company's shop . . . about midnight." The clerk went to the cellar to procure the article sought by Johnson. "Johnson unbolted the door . . . and let in . . . Lowrey, who concealed himself and remained behind when Johnson left, and afterwards "committed a theft." The opinion then said (at 19): "It

---

side the door Miss LaPlante opened the door herself and they then stepped in.

"Now to constitute a breaking there has to be some movement, some movement of some object, like the opening of a door. Just walking through an open doorway is not a breaking . . . . [It should be noted that this statement and *Commonwealth* v. *Strupney*, 105 Mass. 588, 590 (1870), have been somewhat affected by *Commonwealth* v. *Tilley*, 355 Mass. 507, 508 (1969).] [T]here is such a thing as constructive breaking. It's to be distinguished from an actual breaking. An actual breaking would be the opening of a door by the defendant himself. But a constructive breaking is also a breaking within the meaning of the law. And a constructive breaking is one that is accomplished by trick or threat.

"If Linda LaPlante opened the door herself but did so because she had been tricked, deliberately tricked by the Defendant, that would constitute a breaking within the meaning of the law. It would be a constructive breaking because it was accomplished by trick rather than by actual force . . . . [T]here's no evidence to justify finding an actual breaking . . . . [I]f you're satisfied beyond any reasonable doubt that . . . Labare gained access to that apartment by trick, by deliberate trick, even though Miss LaPlante opened the door herself, then you would be warranted in finding that that element of this . . . crime has been satisfied. If . . . you have a reasonable doubt . . . whether any such trick was employed, then you must resolve that doubt in favor of the defendant, and you would then be required to return a verdict of not guilty on this indictment."

was not necessary that Lowrey should have touched the door if he procured himself to be let in by an accomplice and entered with felonious intent. He might have been convicted, even if the hand which he made use of was innocent, as in case of a servant or constable." The opinion then relies upon several decisions and other authorities which state the principle of "constructive breaking." Among authorities so cited were *LeMott's case,* J. Kel. 42 (1664), 89 Eng. Rep. 1073, and 4 Blackstone, Commentaries 226-227 (8th ed. 1778). The opinion then proceeds. "The accomplice inside the house is guilty of the same offence . . . ." The facts in the *Lowrey* case may not have required the adoption in that case of the doctrine of "constructive breaking." The circumstances leading to the conviction of both defendants, however, viewed as a whole, involved sufficient elements of trickery and subterfuge to make it natural for the court to rely upon the authorities which support the doctrine. The case must be viewed as recognition of the doctrine.

Blackstone's Commentaries reasonably may be said to represent this aspect of the common law as it existed at and just after the American Revolution. Of burglary, Blackstone wrote, 4 Blackstone, Commentaries 226-227 (8th ed. 1778), "As to the manner of committing burglary: there must be both a breaking and an entry to complete it . . . . There must *in general* be an actual breaking; not a mere legal *clausum fregit* (by leaping over invisible ideal boundaries, which may constitute a civil trespass) but a substantial and forcible irruption. As at least by breaking, or taking out the glass of, or otherwise opening, a window; picking a lock, or opening it with a key; nay, by lifting up the latch of a door, or unloosing any other fastening which the owner has provided. But if a person leaves his doors or windows open, it is his own folly and negligence, and if a man enters therein, it is no burglary: yet, if he afterwards unlocks an inner or chamber door, it is so. But to come down a chimney is held a burglarious entry; for that is as much closed, as the nature of things will permit. *So also to knock at a door, and upon opening it to rush in with a felonious intent; or,*

*under pretence of taking lodgings, to fall upon the landlord and rob him; or to procure a constable to gain admittance, in order to search for traitors, and then to bind the constable and rob the house*: all the entries have been adjudged burglarious, though there was no actual breaking: for the law will not suffer itself to be trifled with by such evasions, especially under the cloke [*sic*] of legal process. And so, if a servant open and enters his master's chamber door with a felonious design; or if any other person lodging in the same house, or in a public inn, opens and enters another's door, with such evil intent; it is burglary . . . . [I]t is universally agreed, that there must be both a breaking, either in fact *or by implication*, and also an entry, in order to complete the burglary" (emphasis supplied). In *LeMott's case*, J. Kel. 42 (1664), in a situation closely like the present case, entrance obtained by "a false pretence" was held to constitute burglary.[4] Modern American authorities to this effect are collected in 3 Torcia, Wharton's Criminal Law § 330 (14th ed. 1980); Perkins, Criminal Law 192-198 (2d ed. 1969); La Fave & Scott, Criminal Law § 96, at 708-709 (1972).[5]

The cases are consistent with the purpose of a burglary prosecution. Justice Whittemore suggested, in *Common-*

---

[4]In the 1664 decision, at 42, the reporter stated the facts: "Thieves came with intent to Rob . . . [the victim] and finding the Door lockt up, pretending they came to speak with him, and thereupon a Maid Servant opened the Door and they came in and Rob'd him, and this being in the Nighttime, this was adjudged burglary . . . for their Intention being to Rob, and getting the Door open by a false pretence, . . . they were guilty of Burglary, though they did not actually break the House, for this was in Law an actual breaking, being obtained by fraud to have the Door opened" (spelling & capitalization follow official report). See also 7 Dane's Abridgement, 136-137 (1824).

[5]The most recent Massachusetts text on criminal law relies on various authorities, already cited above, as supporting the doctrine of constructive breaking. Nolan, Criminal Law § 402, at 234 (1976). It should be noted that the Model Penal Code § 22.1 (1980), proposes a definition of burglary differing in various respects from the common law crime. The discussion of that section, however, recognizes (at 69) that, at common law, "Entries accomplished by intimidations, trick, or collusion with a servant were . . . held to be breakings." See Note, 100 U. Pa. L. Rev. 411, 412 (1951).

*wealth* v. *Tilley,* 355 Mass. 507, 509 (1969), that the purpose is to protect "the security of the house." That security, of course, is just as much invaded by an entry by trickery as by an actual "break" by the invader himself.

Counsel for the defendants contend that in Massachusetts burglary has been or has now become wholly a statutory offense and that the doctrine of constructive breaking may not be considered as incorporated in the statute. We do not accept this contention. Prior to the Revolution, there were various statutory forms of the offense, all of which referred to "breaking" or "breaking up" of a dwelling or other building or made it a crime to "break and enter." See Colonial Laws of 1642 at 13 (City of Boston reprint, 1887); Prov. Laws, St. 1692-1693, c. 18, § 4; St. 1715-1716, c. 1. No specification of what constituted a "break" or "breaking" appears in the language of any of these statutes. After the Revolution, with the enactment of St. 1784, c. 48, the offense was made capital and was described, "if any person shall in the night time *break* and enter any dwelling house, with intent to . . . rob, steal etc." (emphasis supplied). See St. 1805, c. 101, § 1, where the language with respect to the offense now found in G. L. c. 266, § 14 (note 1, *supra*), was "shall in the night time, break a dwelling house." Later codifications also have used the words "break and enter," or closely similar words, without defining their meaning. Rev. Sts. (1836) c. 126, § 9. Gen. Sts. (1860) c. 161, § 10. Pub. Sts. (1882) c. 203, § 10. R.L. (1902) c. 208, § 14. See for a discussion of some of the legislative history of § 14 and related sections, *Commonwealth* v. *Swahn,* 5 Mass. App. Ct. 642 (1977).

The applicable principles of statutory construction are clear. General Laws c. 4, § 6, Third, reads: "Words and phrases shall be construed according to the common and approved usage of the language; but technical words and phrases and *such others as may have acquired a peculiar and appropriate meaning in law* shall be construed and understood according to such meaning" (emphasis supplied). See Part II, c. 6, art. 6, of the Massachusetts Constitution;

*Crocker* v. *Superior Court*, 208 Mass. 162, 166 et seq. (1911). A statute is not to be construed to repeal the common law, "unless the intent to alter it is clearly expressed." *Commonwealth* v. *Knapp*, 9 Pick. 495, 514 (1830). No such intention can be reasonably inferred from the language of § 14 and its predecessors. This is true even though penal statutes are to be strictly construed. See *Commonwealth* v. *Conway*, 2 Mass. App. Ct. 547, 552-553 (1974), and cases cited.

We hold that the word "breaks" as it appears in § 14 (note 2, *supra*) (as well as other statutory forms of that word), had acquired, prior to the Revolution, and at all times since has had, the common law meaning, including the doctrine of "constructive breaking." That meaning has not been changed or enlarged by any recent enactment.[6] Thus there has been in this case no ex post facto application of § 14, by interpreting "breaks" as including a constructive breaking. Compare *Commonwealth* v. *Davis*, 380 Mass. 1, 16 n.22 (1980); *Commonwealth* v. *Lewis*, 381 Mass. 411, 415-418 (1980).

The defendants also in effect suggest that G. L. c. 266, §§ 17 and 18 (making criminal an entry in the nighttime without breaking), render unnecessary an interpretation of "breaks" in § 14 (note 2, *supra*) as including a common law constructive breaking. We interpret §§ 17 and 18 as defining lesser offenses applicable where there is no evidence of any form of breaking, actual or constructive.

The statute (§ 14), as we interpret it, merely embodies, in respects here pertinent, the content of the applicable com-

---

[6] We perceive nothing to alter our view in *Commonwealth* v. *Sitko*, 372 Mass. 305, 310-311 (1977). There a defendant had entered business premises disguised as a telephone lineman. He had observed the alarm system, which a few days afterward was found to have been neutralized. He was convicted under an indictment charging him as accessory before the fact to the crime of breaking and entering. It could have been inferred that he had at least advised those persons, who later entered to steal, how to by-pass the alarm system. No consideration was necessary or was given concerning whether he could have been charged more directly with breaking and entering.

mon law.   There is no ambiguity about what "breaks" meant in the common law concerning burglary, and thus there is no ambiguity to resolve "in favor of lenity."   See *Commonwealth* v. *Crosscup*, 369 Mass. 228, 234 (1975); *Rewis* v. *United States*, 401 U.S. 808, 812 (1971); *Bifulco* v. *United States*, 447 U.S. 381, 400-401 (1980).

Tatro's counsel ingeniously suggests that an analogy to the present situation is presented by cases arising under 18 U.S.C. § 3109 (1976), holding that entries obtained by "ruse" involve no "breaking" in violation of that statute. *Sabbath* v. *United States*, 391 U.S. 585, 589-590 n.5 (1968), where the court did not (n.7) purport to deal with entries obtained by "ruse." *United States* v. *Dohm*, 597 F.2d 535, 537-538 (5th Cir.), cert. denied sub nom. *Rowen* v. *United States*, 444 U.S. 937 (1979).   The different purposes of that statute (pertaining to forcible entries by officers to execute a search warrant) sufficiently distinguish decisions under it to make of slight assistance whatever analogy may exist between them and the well recognized and inclusive law definition of "break" with relation to the crime of burglary.

*Judgments affirmed.*