COMMONWEALTH *vs.* SEAN P. CALLAGY.

No. 90-P-1556.

Barnstable. November 13, 1991. - July 27, 1992.

Present: PERRETTA, FINE, & GILLERMAN, JJ.

*Grand Jury. Practice, Criminal*, Grand jury proceedings. *Breaking and Entering. Rape.*

No ground for dismissal of indictments was presented by a police officer's statement to the grand jury that, upon her arrival at the defendant's house after the alleged crimes incurred, the defendant refused to answer any questions or speak with the police until he first spoke with an attorney, where review of the grand jury transcript indicated that the defendant failed to sustain his burden of showing that the police officer's statement probably influenced the grand jury's decision to indict him. [88-89]

At the trial of indictments, the judge properly denied the defendant's motion for a required finding of not guilty on an indictment charging him with breaking and entering a dwelling house in the night time, where the jury reasonably could have inferred from all the evidence, including the victim's testimony, that the defendant was in the house when she awoke and that he had entered through the closed slider door to the kitchen. [89-90]

At the trial of indictments, the judge properly denied the defendant's motion for a required finding of not guilty on an indictment charging aggravated rape where, in view of the facts presented, there was no prejudice to the defendant from any misstatement in the aggravated rape indictment, or any variance between the recital of the essential elements of that crime and the proof presented. [90-91]

INDICTMENTS found and returned in the Superior Court Department on June 13, 1989.

The cases were tried before *George C. Keady, Jr.*, J.

*Earle C. Cooley* (*John J. McGlone, III*, with him) for the defendant.

*Julia K. Vermynck*, Assistant District Attorney, for the Commonwealth.

PERRETTA, J. About 3:00 A.M., on June 1, 1989, the victim was walking to her bathroom when she was grabbed, choked, forced back to her bed, and raped. On his appeal from convictions by a jury on indictments charging him with burglary and aggravated rape, the defendant claims that the integrity of the grand jury proceedings was substantially impaired by police misconduct, that there was insufficient evidence to establish his guilt, and that there was a prejudicial variance between the crime charged (aggravated rape) and proved. We affirm the convictions.

1. *The evidence.* It was the victim's testimony that she was divorced and lived alone in her house. She mentioned to her hairdresser, the defendant's mother, that she needed someone to do her yard work. Arrangements were made for one of the defendant's younger brothers to care for the victim's yard. Because he was not immediately available, the defendant, who was going to New York in June, filled in for him during May.

When the defendant worked in the victim's yard, she would invite him into her home for refreshments and allow him to use her telephone. On at least one occasion, she left him alone in the house. Over-all, the victim treated the defendant as if he were her grandson.[1]

On May 31, the defendant went to the victim's house to pick up a check for work that he had done earlier in the day. The victim paid him and wished him well on his trip to New York. She did not expect to see him again. That night she entertained friends in her home. They left at 10:30 P.M., and she retired a short time later, about 11:15 P.M.

Some four hours later, the victim awakened and started towards her bathroom. She had not gone far when she was grabbed by the arm with such force that she fell. The victim recognized the defendant immediately. She thought of fleeing and asked to use the bathroom. Realizing that the window was too small for any escape, the victim returned to the bedroom. She was afraid of the defendant who twice had exerted

---

[1]At the time of trial, the victim was fifty-three years of age, and the defendant was nineteen.

such pressure on her throat that she nearly lost conscious-
ness. He told her that if she did not do as she was told, he
would kill her. When he threw her on the bed, she so feared
for her life that she decided not to struggle.

After the defendant raped her, the victim attempted to re-
main calm so that the defendant would leave the house. She
engaged him in small talk, asking what he had done earlier
in the evening and whether he would like some lemonade.
When they went into the kitchen, the victim noticed that the
defendant's sneakers were on the side deck to the house, just
outside the sliding glass door leading into the kitchen. She
asked him where his car was, and he answered that he had
walked to her house. After the defendant left, the victim
called the police.

Police officers testified as to their observations of the vic-
tim. They described her as almost hysterical, sick to her
stomach, and covered with fresh bruises. She was taken to
the hospital.

Two officers went to the defendant's house and, after read-
ing him his Miranda rights, spoke to him in the presence of
his father. He told the police that he and his brother had
been at a party and that they had arrived home at 2:30 A.M.
The police arrested him and brought him to the police sta-
tion. At the station, the defendant told the police that he had
not seen the victim since 4:00 P.M., the previous day. He and
his brother had been to a "keg party" until 1:00 A.M., and,
when they left, they went directly home and did not go out
again. The police returned to the defendant's house and re-
trieved a pair of water-soaked sneakers from a hallway.

The defendant testified that, when he stopped at the vic-
tim's house on May 31, to pick up his check, they engaged
in some conversation. She asked what his plans for that night
were, and he told her that he was going out with friends. He
said that the victim gave him a certain "look" to imply that
there might be "something" going on between them, and she
asked him to "stop by anyhow."

On his way home from the party, the defendant drove into
the victim's driveway, left his brother asleep in the car, and

went to the sliding door by the kitchen. After taking off his sneakers and knocking on the door, the victim let him into the house. They engaged in intercourse, and he drove home. The defendant admitted that he had lied to the police about not having seen the victim since the time she gave him his check, but he was frightened. They were accusing him of rape. He had denied the entire incident because he did not rape the victim and because he was concerned about what his parents would think if they knew that he had engaged in sex with the victim.

Witnesses verified the presence of the defendant and his brother at the party, setting their departure at 1:00 A.M. The defendant's father testified that he remembered the time they arrived home, 2:00 A.M., because they set off the house alarm.

2. *The grand jury proceedings.* It is the defendant's claim that a police officer made a false and deceptive statement to the grand jury in order to obtain the indictments and that, therefore, the charges must be dismissed. The officer told the grand jury that, upon her arrival at the defendant's house, he refused to answer any questions or speak with the police until he first spoke with an attorney. The prosecutor instructed the grand jurors that they "should draw no inferences adverse to the defendant because he chose to exercise his right to remain silent and asked to speak to a lawyer."

We agree with the Superior Court judge's strong disapproval of informing a grand jury that a suspect elected to exercise his right to remain silent. We also agree with his conclusion that this information did not impair the integrity of those proceedings in the present case.

Assuming without deciding (the Commonwealth argues that the officer's statement is taken out of context) that the officer gave misleading information for the purpose of obtaining the indictments, we do not think that this information "probably influenced the grand jury's determination to indict the defendant." *Commonwealth* v. *Kelcourse*, 404 Mass. 466, 468 (1989), citing *Commonwealth* v. *Mayfield*, 398 Mass. 615, 621 (1986). It may be that, had the grand jury

known of the statements that the defendant gave the police in answering their questions, they might have been influenced in his favor. However, the defendant admitted at trial that those answers were false.

Because it would be too perverse to do otherwise, we do not recognize a defendant as having any right to argue that a grand jury should have been informed either of his statements to, or his purported cooperation with, the police when it is admitted subsequent to those proceedings that the volunteered information was false.[2] In the present case, we think it more appropriate to take the evidence presented and view it with an eye to the improper reference to the defendant's supposed invocation of the right to remain silent.

Evidence was presented to the grand jury to show that the defendant took care of the victim's yard, that, on the date in question, he entered her house by opening a sliding door, that he grabbed her by her throat, that a struggle ensued, and that he raped her. The victim's emotional and physical condition were described, and her statement that she saw his white sneakers outside her door was related. The grand jury were also told that a pair of wet, white sneakers were found in a hallway of the defendant's house.

Our review of the grand jury transcript leads us to conclude that the defendant did not sustain his burden of showing that the reference to his refusal to answer questions probably influenced the grand jury's decision to indict him. See *Commonwealth* v. *Kelcourse*, 404 Mass. at 467-469. The motion to dismiss was rightly denied.

3. *Evidence of the breaking and entering.* Little discussion is warranted in disposing of the defendant's claim that he was entitled to a required finding of not guilty on the indictment charging him with breaking and entering. In making this argument, the defendant relies upon the lack of evidence of a forced entry and the victim's testimony that her front door and four sliders were locked.

---

[2]Any falsehood known to the Commonwealth at the time of the grand jury proceedings may, of course, be relevant evidence of consciousness of guilt.

Although the victim testified that, to her knowledge, all the doors were closed and locked, the jury could have discredited this testimony as being based not upon her actual knowledge but upon what she described as her unvarying practice to lock her doors at night. Additionally, there was evidence that only three of the slider doors had sticks, making it impossible to open them from the outside. The slider without the stick allowed access from the kitchen to the outside deck, where the victim saw the defendant's sneakers.

Moreover, no objections were taken to the testimony of the police officers who testified that, on the date in question, the victim told them that she always left the kitchen slider unlocked and that the defendant was aware of that fact. The jury reasonably could infer from all the evidence, including the victim's testimony that the defendant was in the house when she awoke, that he had entered through the closed slider door to the kitchen. See *Commonwealth* v. *Tilley*, 355 Mass. 507 (1969); *Commonwealth* v. *Burke*, 392 Mass. 688, 689-690 (1984).

4. *The aggravated rape charge.* In charging the defendant with aggravated rape, see G. L. c. 265, § 22, the Commonwealth identified the predicate crime as being "burglary as defined in . . . [G. L.] c. 266, § 18." Section 18 speaks to a night time entry of a "dwelling house without breaking." The defendant focuses upon the reference in the indictment to § 18 and argues that, because the case was presented and submitted to the jury on a theory neither alleged nor proved, breaking and entering, he was entitled to a required finding of not guilty.

This argument fails. The indictment under G. L. c. 265, § 22, was in the statutory form, and it was unnecessary for the Commonwealth to identify the predicate crime. See G. L. c. 277, §§ 33 & 39; Mass.R.Crim.P. 4(a), 378 Mass. 849 (1979). Nonetheless, the Commonwealth did so, and the question becomes whether the defendant was prejudiced by the reference to § 18. See Smith, Criminal Practice & Procedure § 725 (2d ed. 1983).

It is difficult to accept the defendant's contention that the Commonwealth proceeded on a theory neither alleged nor proved. Both indictments arose out of the defendant's presence in the victim's house in the night time on June 1, 1989. The defendant had the minutes of the grand jury proceedings which show that evidence was there presented of a breaking and entering in the night time and a rape. The first indictment charged that the defendant "did *break* and enter in the night time the dwelling house of . . . [the victim]" (emphasis supplied) with the intent to commit rape, in violation of § 18. The defendant makes no complaint about the form of that indictment even though reference to § 18 is also therein made. Moreover, his motion to dismiss the indictments was based upon the sole ground that the integrity of the grand jury proceedings had been impaired. No mention was made of any conflict between the descriptive words and the statutory citation in the indictments.

In view of these facts, we do not accept the defendant's argument that he was prejudiced in his defense in that he was prepared to defend against an entry but not a breaking. There being no prejudice to the defendant from any misstatement in the indictment charging him with aggravated rape or any variance between the recital of the essential elements of that crime and the proof, the motion for a required finding of not guilty was properly denied. See *Commonwealth* v. *Clark*, 5 Mass. App. Ct. 673, 677-678 (1977), and cases therein cited.

*Judgments affirmed.*