Commonwealth *vs.* Luis Cextary (No. 1)
(and five companion cases[1]).

No. 05-P-1453.

Suffolk. November 6, 2006. - April 26, 2007.

Present: Laurence, Gelinas, & Grainger, JJ.[2]

*Breaking and Entering.*

The evidence at a criminal trial was sufficient to convict the defendants of breaking and entering a motor vehicle with intent to commit a felony, where the act of one defendant of climbing onto the top of a car and slipping through an open sunroof constituted the requisite breaking. [756-758]

Indictments found and returned in the Superior Court Department on August 6, 2003.

The cases were tried before *Jeffrey A. Locke,* J.

*Eric S. Brandt,* Committee for Public Counsel Services, for Carmelo Maldonado.

*Estera Halpern* for Luis Cextary.

*Ellen Bisson* (*Kathleen Celio,* Assistant District Attorney, with her) for the Commonwealth.

Laurence, J. The defendants, Luis Cextary and Carmelo Maldonado, appeal their convictions, after a jury trial, for breaking and entering a motor vehicle with intent to commit a felony (in violation of G. L. c. 266, § 18), and possession of burglarious tools (in violation of G. L. c. 266, § 49).[3] Maldonado asserts

---

[1]Two against Luis Cextary and three against Carmelo Maldonado.

[2]Justice Laurence participated in the deliberation on this case and authored the opinion prior to his retirement.

[3]Cextary was convicted on a theory of joint venture. Both defendants additionally were convicted of larceny of property with a value not exceeding $250, convictions that were placed on file. During trial, Maldonado conceded his guilt on the larceny charge. Maldonado also was convicted as a habitual offender under G. L. c. 279, § 25, a matter that is not before us.

that his motions for required findings of not guilty (made at the close of the Commonwealth's case and again following the verdicts) should have been allowed (a) on the charge of breaking and entering, because he committed no breaking by entering the vehicle (from which he indisputably stole a stereo part) through the open sunroof; and (b) on the charge of possession of burglarious tools, because the Commonwealth's evidence was insufficient to establish either his knowledge of the tools that were present in the car he and Cextary were riding in, or that he intended to use the tools for the purpose of committing a breaking.

Cextary likewise challenges the denials of his required finding motions on the grounds of insufficient evidence of breaking and of possession of burglarious tools, as well as insufficiency in the proof of his participation as a joint venturer. He also complains of prejudicial prosecutorial closing argument and the judge's failure to instruct on the element of knowledge with respect to the burglarious tools charge.

Addressing in this opinion only the novel issue whether a breaking under the statute occurred by entry through the sunroof, we conclude that it did, that the defendants' arguments regarding other asserted errors are all unpersuasive, and that the judgments should be affirmed.[4]

*Relevant facts.* The jury permissibly could have found and reasonably could have inferred the following facts as to the offenses charged, in the light most favorable to the Commonwealth. See *Commonwealth* v. *Sokphann Chhim*, 447 Mass. 370, 376-377 (2006), and cases cited.

At approximately 5:10 P.M. on April 30, 2003, Chelsea police Detective Christopher Borum, while conducting an investigation in the Revere area, noticed the defendants riding in a Toyota Cressida automobile on Ocean Avenue. Cextary (whom Borum recognized) was driving, while Maldonado occupied the front passenger seat. Borum, driving an unmarked vehicle, turned his

---

[4]The other contentions made by the defendants raise no substantial questions of law, satisfactorily are rebutted in the brief for the Commonwealth, and are of insufficient merit to warrant published discussion. We have addressed them in a memorandum and order pursuant to rule 1:28 also issued this day. *Commonwealth* v. *Cextary (No. 2), post* 1119 (2007).

attention to the Toyota as it traveled unusually slowly and made an abrupt U-turn, and decided to place it under surveillance.

The Toyota continued to move slowly, "slower than [the] traffic itself . . . probably not more than fifteen or twenty miles an hour." Borum observed the defendants "looking in all general directions, including to parked motor vehicles." Suddenly, Cextary stopped the car in front of an apartment building, activated the hazard lights, and backed up a short distance into oncoming traffic. He and Maldonado then exited the car and walked across the street. They stood by a wall near Revere Beach, looking up and down the street. After a short period of time, Maldonado walked over to a parked and unoccupied Nissan Pathfinder sport utility vehicle and attempted unsuccessfully to open the front passenger side door. Cextary remained on the sidewalk for a few minutes and then returned to his car. While he waited for Maldonado, Cextary kept depressing the brake. Maldonado looked into a few more cars and then returned to Cextary's Toyota.

Borum continued to observe the defendants as they drove down Revere Beach Boulevard. They appeared to be driving the posted speed limit until they passed certain cars parked along the side of the road. The defendants then slowed down and turned their heads to look into the vehicles. The defendants continued this pattern, driving past parked vehicles and looking into them, until they ended up at the same apartment building where Borum's attention first had been drawn. Cextary then parked the vehicle.

While Cextary waited in the car, Maldonado exited and "appeared to be using a cellular phone or holding one." Cextary then pulled away from Maldonado until they were two to three car lengths apart. Meanwhile, Maldonado approached another parked, unoccupied sport utility vehicle and grabbed the passenger side door handle, but could not open the door. Cextary kept "watching [and] waiting." Maldonado then returned to Cextary's car, and the two continued to "case" the area of Ocean Avenue, driving slowly up and down the street.

Eventually, the defendants turned into a Massachusetts Bay Transportation Authority (MBTA) public parking lot along Ocean Avenue. Borum pulled into an adjacent lot to observe

their actions. Cextary slowly drove up, down, and through the parking lanes, while both defendants looked at certain parked motor vehicles. Cextary finally drove to the southwest corner of the lot, which was the furthest point from the street, and parked next to the driver's side of a Mazda Protégé sport hatchback automobile. While Cextary waited in the car, Maldonado exited Cextary's car and jumped on top of the Mazda. He then entered the vehicle through its open sunroof (which Borum testified was "on the small side," no larger than two feet by three feet). Borum observed Maldonado sitting in the front passenger seat of the Mazda for several minutes. Finally, Maldonado exited the Mazda through the passenger side door and rejoined Cextary. The pair drove to a second, nearby parking lot, then returned to the MBTA lot.

With help from fellow officers, Borum caught up with the defendants in the MBTA lot. While other officers questioned the defendants, Borum looked into the interior of the Mazda, noticing that bills and papers were strewn about the front floor, as if the vehicle had been searched, and that the Sony car stereo face plate was missing. When he walked back to Cextary's vehicle, Borum saw a Sony car stereo face plate in the passenger side compartment located under the door handle. The officers also found a black knapsack and a yellow and black tool box in Cextary's vehicle.[5] These containers held a series of tools and other items, including a mallet, vice grips, pliers, wrenches, Phillips head and flat head screwdrivers, black electrical tape, a hammer, a cassette tape recorder, and a car stereo. Borum also discovered wire snips, useful for cutting "little, small wires," in the black knapsack. Borum testified that tools commonly are used in connection with criminal entries into cars and homes. Subsequently, Borum confirmed that the face plate found in Cextary's car matched the stereo in the Mazda.

The defendants denied they had been doing anything wrong and claimed to be trying to find a parking space so that they could walk on the beach. Borum testified that there were "hun-

---

[5]Borum testified that the knapsack was located on the rear passenger side floor but did not say where the black and yellow tool box was found. All parties have argued on the premise that the tool box also was found on the rear passenger side floor.

dreds" of available parking spaces along the boulevard that the defendants had been canvassing. At 8:30 P.M. that evening, the owner of the Mazda (who had parked his car in the lot at 8:30 A.M., and "hit [his] remote control twice" to lock all doors and hatches and to activate the car alarm) returned to his car and pressed the button on the keyless entry device. He heard a different noise than usually occurred, indicating that the alarm had been tripped sometime during the day.

*Discussion.* The defendants' principal appellate contention is that Maldonado's entry into the Mazda through the sunroof did not constitute the requisite breaking that must be proved before a violation of G. L. c. 266, § 18, can be found. They are mistaken.

Massachusetts, unlike many jurisdictions, does continue, by statute, to recognize breaking and entering as separate elements of the offense,[6] as at common law. See *Commonwealth* v. *Cotto*, 52 Mass. App. Ct. 225, 228 (2001). Nonetheless, the statutory element of a "breaking" is broadly defined. *Commonwealth* v. *Burke*, 392 Mass. 688, 689-690 (1984). The classic requirement (relied on by the defendants) is proof of some physical act, however slight, to remove an obstacle to entry. See *Commonwealth* v. *Hall*, 48 Mass. App. Ct. 727, 730-731 (2000). Even at common law, however, an actual, physical breaking was not invariably required. There could be a breaking "either in fact or by implication," 4 Blackstone, Commentaries 227 (21st ed. 1844); a classic example of such an implied or constructive burglarious breaking was "to come down a chimney," *id.* at 226. In response to hypertechnical quibbles that in such a case there was "no actual breaking," Blackstone responded that "the law will not suffer itself to be trifled with by such evasions, especially under the cloak of legal process" (citation omitted). *Ibid.*

Massachusetts law long has accepted the concept of "constructive breaking." See *Commonwealth* v. *Labare*, 11 Mass. App. Ct. 370, 377-378 (1981) (involving entry gained through a

---

[6]General Laws c. 266, § 18, as amended by St. 1989, c. 490, provides in pertinent part: "Whoever . . . breaks and enters in the day time a building, ship or motor vehicle or vessel, with intent to commit a felony, no person lawfully therein being put in fear, shall be punished by imprisonment in the state prison for not more than ten years . . . ." Maldonado conceded his intent to commit a felony by acknowledging being guilty of larceny.

false pretense). It also recognizes the so-called "open window" doctrine, which holds (analogously to the chimney situation) that entry through an opening not intended or ordinarily useable as a means of entry is within the scope of the statute. See *Commonwealth* v. *Tilley*, 355 Mass. 507, 509 (1969). See also *Commonwealth* v. *Hall*, 48 Mass. App. Ct. at 730-731 (involving entry through an open window almost five feet above the ground).[7]

That doctrine finds clear and sensible application here. Scrambling onto the top of a car and slipping through an open sunroof[8] is as surreptitiously intrusive a violation of the security of one of the several physical spaces intended to be protected by G. L. c. 266, § 18, as is crawling down a chimney or scaling a wall to clamber through a window high above the ground.[9] Consequently the judge correctly submitted the breaking and entering charge to the jury.[10]

---

[7]The defendants' reiterated contention that such statements in *Commonwealth* v. *Tilley*, 355 Mass. 507 (1969), and in *Commonwealth* v. *Hall*, 48 Mass. App. Ct. 727 (2000), are "pure dictum" and should not be applied here — in recognition of their manifest applicability to the instant circumstances — is without merit. In *Commonwealth* v. *Hall, supra*, our discussion of the "open window" standard was necessary in rejecting the defendant's argument that the trial judge had erred by including that standard in his instruction on what constitutes a breaking. We also noted in the *Hall* case that the discussion in *Commonwealth* v. *Tilley, supra*, of the "open window" doctrine clearly reflected the intention of the Supreme Judicial Court to state the law as to entry by an open window that one cannot walk through — a statement that was incorporated into Instruction 5.31 of the Model Jury Instructions for Use in the District Court (1995). *Ibid.*

[8]The testimony clearly established that the Mazda owner took conscious action to secure the doors and hatches and to activate the car alarm to prevent entry by any customary means. Compare *Commonwealth* v. *Tilley, supra* at 508 (victim's testimony that she had "made sure that both doors [of her house] were locked warranted the inference that she had intended to secure the house against entrance by intruders, and was not likely to have left any accessible window in such state that it could be used for entering").

[9]We need not address the Commonwealth's additional point, not yet resolved in Massachusetts, that Maldonado's exiting the Mazda through the passenger side door was a "breaking out" that independently satisfied the "breaking" requirement. A comparison of the language of G. L. c. 266, §§ 14 and 15, with that of § 18 indicates that a breaking effected after entry does not appear to be within the latter statute.

[10]The defendants argue that adopting the "open window" standard would be in derogation of the common law, effectively would eliminate the breaking requirement from the statute, and in any event applies only to homes, not cars. These arguments are, however, unconvincing, conclusory policy assertions that are beside the point, in view of the true scope of the common-law break-

As set forth at note 4, *supra,* we have reviewed the defendants' other claims of error and found nothing in them that requires published discussion. The motions for required findings properly were denied.

*Judgments affirmed.*

ing concept, the holding in *Commonwealth* v. *Hall, supra,* and the obvious intent of the Legislature to offer the same protection and security to motor vehicles, by their explicit inclusion, in the statute, as traditionally has been extended to houses and other dwelling places.

Given the defendants' acknowledgment that the common-law requirement for breaking "require[d] some physical act, 'however slight,' which removed an obstacle to entry," it is plausibly arguable that Maldonado's physical act of climbing onto the top of the Mazda, thereby removing the obstacle of height and attendant relative inaccessibility in order to gain entry into the vehicle, independently constituted a breaking. Furthermore, the jury reasonably could have inferred that Maldonado necessarily had to apply some degree of physical force, however slight, to overcome the obstacle of the relatively small size of the sunroof, i.e., to squeeze his body through the narrow opening and into the passenger seat, inevitably dislodging tiny particles of material from the edge of the sunroof.