## COMMONWEALTH *vs.* SAMSON SCOTT.

No. 06-P-1140.

Suffolk. December 18, 2007. - April 28, 2008.

Present: DUFFLY, GRAHAM, & KATZMANN, JJ.

*Practice, Criminal,* Required finding. *Breaking and Entering. Evidence,* Inference. *Trespass.*

At the District Court trial of a complaint charging breaking and entering a building in the daytime with the intent to commit a misdemeanor (a trespass) in violation of G. L. c. 266, § 16A, the judge properly denied the defendant's motion for a required finding of not guilty at the end of the Commonwealth's case, where there was direct evidence that the defendant broke and entered into a building, in that the defendant was seen walking down the stairs of a hallway from a second-floor apartment and out the front exterior door of a building that he had no legal right to enter or stay in, and that the front exterior door and the doors and windows of that apartment were kept closed and locked [599-602]; where there was sufficient evidence to support an inference that the defendant had an intent to commit a criminal trespass when he broke and entered the building, in that the jury could have reasonably determined that the various security measures in place put an individual on notice that entry to the building was forbidden, and that the defendant had necessarily encountered and frustrated those security measures in entering the apartment [602-604]; and where there was no merit to the defendant's argument that intent to commit a trespass could not be the underlying intended misdemeanor for a breaking and entering conviction [604].

COMPLAINT received and sworn to in the Roxbury Division of the District Court Department on July 19, 2004.

The case was tried before *Michael C. Bolden,* J.

*Krista M. Larsen* for the defendant.

*Stephen M. Kerr* for the Commonwealth.

KATZMANN, J. Having been convicted by a District Court jury of breaking and entering a building in the daytime with the intent to commit a misdemeanor (a trespass) in violation of

G. L. c. 266, § 16A[1] (count one of a five count complaint), the defendant now appeals. He claims that the judge erred in denying his motion for a required finding of not guilty at the end of the Commonwealth's case.[2] We affirm.

*Background.* We summarize the evidence in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with the issues raised. See *Commonwealth v. Fowler*, 431 Mass. 30, 31 (2000).

The Commonwealth presented evidence on the breaking and entering charge through the testimony of Obin Onujiogu, the owner of the premises in question, a two-family house located at 91 West Cottage Street in Roxbury (building). The building consisted of a first-floor apartment occupied by renter Richard Walker, a vacant four-bedroom apartment on the second floor, and an occupied third-floor attic level that had been converted into a two-bedroom living space. Outside one of the second-floor apartment windows was an emergency exit or fire escape, with iron stairs going all the way down to the ground. In the front of the building, there were two exterior doors at street level. One door was to Walker's apartment and the other door opened into a hallway that led up to the entrance to the second-floor apartment.

Onujiogu, who lived three minutes away by car from the building, experienced continual problems with people breaking

---

[1]Section 16A of G. L. c. 266, as amended by St. 1966, c. 408, provides in relevant part:

> "Whoever in the nighttime or daytime breaks and enters a building, ship, vessel or vehicle with intent to commit a misdemeanor shall be punished by a fine . . . or by imprisonment . . . , or both."

[2]When trial began, count one originally charged breaking and entering in the daytime with the intent to commit a felony. At the close of the Commonwealth's case, after argument by defense counsel and at the request of the Commonwealth, the judge reduced the charge to breaking and entering in the daytime with the intent to commit a misdemeanor, to wit, a trespass. The jury also considered charges of assault and battery by means of a dangerous weapon (count two), assault and battery on a police officer (count three), resisting arrest (count four), and possession of a class B controlled substance, cocaine (count five). In addition to count one, the jury returned convictions on counts three, four and five. In this appeal, the defendant does not challenge his convictions on counts three, four, or five, and therefore waives any claim regarding them. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Commonwealth v. Williams*, 422 Mass. 111, 112 n.1 (1996).

into the vacant second-floor apartment. Onujiogu had a network of individuals who would inform him by telephone if they saw anyone on the second floor of the building. After receiving word that someone was inside the second-floor apartment, Onujiogu would drive to the building and would sometimes see people on the second floor.[3] Other times, without being informed that someone was in the apartment, he sat in a van outside of the building in order to observe it. Onujiogu called the police "repeatedly," but the "people would split" by the time the police arrived. In response to these problems, Onujiogu attempted to fortify the building. He replaced the window on the second floor beside the fire escape, and positioned a piece of wood on this window in order to prevent it from being raised from the outside. Onujiogu also replaced the locks on the doors of the second-floor apartment, and the locks to the front door that led from street level into a hallway and stairs leading up to the second-floor apartment.[4] He kept the doors and windows of the apartment closed and locked.

Onujiogu further testified that on July 18, 2004, at approximately 6:30 A.M., he received a telephone call from the woman residing in the third-floor attic of the building. As a result of this call, he telephoned the police and drove immediately to the building, arriving there three minutes after receiving the third-floor tenant's call. Upon arrival at the building, he saw the defendant walk down the stairs from the second floor and leave the building from the exterior front door (which led to the entrance to the second-floor apartment). The defendant did not have Onujiogu's permission to be inside the building. Onujiogu (who had never seen the defendant before) asked him, "[S]o you keep doing this? So you keep doing this?" The defendant did not respond. The police arrived and began speaking with the defendant, who then started to run. Police officers stopped the defendant and restrained him.

---

[3]It is unclear from the transcript if "people" refers to more than one person on a single intrusion or one individual person on a number of separate intrusions.

[4]During cross-examination and again on redirect examination, Onujiogu clarified that a front door and a back door were the only entrances that led directly to the second-floor level, and that an exterior front door opened to a hallway and staircase leading to the second-floor apartment. Onujiogu also testified that there was a second exterior front door, but that only led to the first-floor apartment.

Onujiogu and two police officers went into the second-floor apartment. According to Onujiogu, the window beside the emergency exit was open and the "doors" were unlocked. While Onujiogu did not know precisely when he had last been at the building prior to July 18, he testified that he "should have been" there during that week, and that at that time he had locked every door and "barred" the window beside the emergency exit.[5]

*Discussion.* In contending that, at the close of the Commonwealth's case, the judge erred in denying his motion for a required finding of not guilty on the charge of breaking and entering in the daytime with the intent to commit a misdemeanor, the defendant argues (1) that the Commonwealth did not present sufficient evidence to prove that he "broke into, or entered, the vacant second floor apartment of 91 West Cottage Street," and (2) that trespass cannot be the intended misdemeanor, and even assuming that it could, the judge erred in finding that there was sufficient evidence of intent to trespass so as to permit the case to proceed at the close of the Commonwealth's case. These contentions are unavailing.

Because the defendant's argument is limited to the claim that

---

[5]For the purposes of our discussion below, we do not consider the evidence presented by the defendant. The defendant called two witnesses, Walker and himself. Walker testified that he had met the defendant in the previous month, when the defendant helped him start his car. Walker testified that if the defendant was on the property on July 18, it might have been because he was waiting for Walker to "come back to give him some money or something," but that he did not know. Walker further testified that although the defendant may have used the bathroom in Walker's first-floor apartment on occasion, the defendant did not have Walker's permission to be in the apartment on July 18. According to the defendant's testimony, on July 18, he went to help Walker fix the starter on Walker's car, Walker left to get money to buy a new starter, and the defendant was waiting for Walker on the sidewalk in front of the building. The third-floor tenant opened her window and asked the defendant if he had seen anyone go in the second-floor apartment, and the defendant replied that he had not. Onujiogu then arrived and asked him what he was doing there. The defendant responded that he was there to fix Walker's truck. A few minutes later, the police arrived.

The defendant did not renew his motion for a required finding of not guilty at the close of his case. While we observe that the Commonwealth's case here did not deteriorate as a result of the defense's evidence, see *Commonwealth* v. *O'Laughlin*, 446 Mass. 188, 203-205 (2006); compare *Commonwealth* v. *McGovern*, 397 Mass. 863, 867-868 (1986); *Commonwealth* v. *Melton*, 436 Mass. 291, 294 n.2 (2002), in this appeal the defendant does not request that we consider the evidence presented by him, nor do we do so.

the judge denied his motion for a required finding of not guilty at the end of the Commonwealth's case, "we consider only the evidence introduced up to the time that the Commonwealth rested its case, and the defendant first filed his motion[]." *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976). "The sole question raised . . . is whether 'there was sufficient evidence of the defendant's guilt to warrant the submission of the case[] to a jury.' " *Ibid.*, quoting from *Commonwealth* v. *Altenhaus*, 317 Mass. 270, 271 (1944). We must determine "whether the evidence, in its light most favorable to the Commonwealth . . . is sufficient . . . to permit [any rational trier of fact] to infer the existence of the essential elements of the crime charged." *Commonwealth* v. *Kelley, supra,* quoting from *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975). *Commonwealth* v. *Murphy*, 31 Mass. App. Ct. 901, 901 (1991). "Inferences drawn from the evidence are permitted if reasonable, possible, and not unwarranted because too remote — although the inferences need not be necessary or inescapable. . . . More than only 'some record evidence, however slight,' is necessary to avoid a required finding of not guilty." *Ibid.*, quoting from *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). "Nor may a conviction rest upon the piling of inference upon inference or conjecture and speculation." *Commonwealth* v. *Murphy, supra,* quoting from *Commonwealth* v. *Mandile*, 403 Mass. 93, 94 (1988). A motion for a required finding of not guilty will be allowed only when the judge finds that "the evidence is insufficient as a matter of law to sustain a conviction on the charge." *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985), quoting from Mass. R.Crim.P. 25(a), 378 Mass. 896 (1979). See Smith, Criminal Practice and Procedure §§ 36.4-36.11 (3d ed. 2007).

The defendant's argument rests initially upon his contention that there was insufficient evidence that he broke and entered into the second-floor apartment. However, the crime charged is broader, and includes the entire building rather than just the claim that the defendant was within the four walls of that apartment. There was direct evidence that the defendant was seen in the building walking down the stairs of a hallway that was protected from the public by a locked door, and leaving by this door that served as the entryway from the street level to the

second-floor apartment. Cf. *Commonwealth* v. *Doucette*, 430 Mass. 461, 467 (1999) (regarding crime of home invasion, "term 'dwelling house' as used in the context of burglary always has been construed broadly, and, for purposes of the burglary statute, 'an apartment dweller's "dwelling house" does include secured common hallways' " [citations omitted]); *Commonwealth* v. *Goldoff*, 24 Mass. App. Ct. 458, 462 (1987) (regarding crime of breaking and entering a dwelling house in the nighttime with intent to commit a felony, "in the context of contemporary multi-unit residential structures, we can think of no reason why [the historical] right [to security in one's place of habitation] should not apply to tenants who reach their apartment units by a common hallway which they have collectively secured from the general public by a locked door"). This evidence was sufficient to support the finding that the defendant must have opened a closed door or a closed window in order to make his entry into the building. See *Commonwealth* v. *Burke*, 392 Mass. 688, 692 (1984) (finding can be based on inferences from circumstantial evidence as well as physical proof). See also *Commonwealth* v. *Labare*, 11 Mass. App. Ct. 370, 372 n.3 (1981) (actual breaking occurs when defendant opens closed door or closed window even though window or door is unlocked). The entry of any part of the defendant's body into any part of the building suffices to prove the crime. See *Commonwealth* v. *Burke, supra* at 690-691; *Commonwealth* v. *Stokes*, 440 Mass. 741, 747-748 (2004) (any entry into enclosure is sufficient); *Commonwealth* v. *Cotto*, 52 Mass. App. Ct. 225, 229 (2001) (entry occurs when any part of defendant's body, or instrument used to commit intended felony, crosses threshold of structure). See generally Stearns, Massachusetts Criminal Law: A District Court Prosecutor's Guide 625-627 (27th ed. 2007).

In sum, as there was direct evidence that the defendant was seen walking down the stairs from the second-floor apartment and out a front exterior door of a building that he had no legal right to enter or stay in, and that the front exterior door and the doors and windows of that apartment were kept closed and locked, the evidence was sufficient for the case to be submitted

to the jury.[6] Insofar as the defendant contends that there were discrepancies between the testimony of Onujiogu and one of the responding police officers, particularly regarding the status of the locks on the doors and windows,[7] his argument is misplaced, given that the judge must assess the evidence in the light most favorable to the Commonwealth when considering a motion for a required finding at the end of the Commonwealth's case. The evidence was sufficient for the case to get over the rail, leaving to the jury the assessment of questions of credibility. See *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992), quoting from *Commonwealth* v. *Wilborne*, 382 Mass. 241, 245 (1981) ("To the extent that conflicting inferences are possible from the evidence, 'it is for the jury to determine where the truth lies' "). See also *Commonwealth* v. *Nardone*, 406 Mass. 123, 129-130 (1989) (defendant's arguments directed toward weight and credibility of evidence is a matter wholly within province of the jury). The judge did not err in allowing the case to proceed.

The evidence was sufficient regarding the final prong of G. L. c. 266, § 16A, requiring that the Commonwealth prove that the defendant, when he entered the building, intended to commit a misdemeanor. See G. L. c. 266, § 16A. Although not

---

[6]While, as noted, the defendant erroneously seeks to limit review to breaking and entering of the second-floor apartment, even on those limited terms, the evidence was sufficient for the case to proceed to the jury. The third-floor tenant telephoned Onujiogu and this resulted in Onujiogu telephoning the police and going to the building. Onujiogu testified that he found the second-floor apartment window beside the emergency exit opened and the door to the apartment unlocked. Onujiogu further testified that he had locked that window and door (although, admittedly, he could not remember when he most recently had been there). In addition, the defendant was seen walking down the stairs from a hallway that leads to the second-floor apartment, and the defendant was not given permission to be there. A fact finder could infer that the defendant had come to that hallway and stairs from the second-floor apartment. See *Commonwealth* v. *Ortega*, 441 Mass. 170, 174 (2004), quoting from *Commonwealth* v. *Velasquez*, 48 Mass. App. Ct. 147, 150 (1999) ("proof may be accomplished by circumstantial evidence and the 'reasonable — not inescapable — inferences to be drawn from it' ").

[7]Onujiogu's testimony differed in some respects from the testimony of one of the responding police officers. The officer testified that when he and Onujiogu went inside the second-floor apartment for an inspection, the doors and windows were locked. Onujiogu testified, however, that during the walkthrough of the apartment with the police, it was discovered that the "doors" were unlocked and the window beside the emergency exit was open.

ultimately identified by the judge in his charge, the applicable misdemeanor was criminal trespass.[8] See note 2, *supra*. The criminal trespass statute, G. L. c. 266, § 120, as amended by St. 1983, c. 678, § 6, provides in relevant part that "[w]hoever, without right enters or remains in or upon the dwelling house [or] buildings . . . of another, . . . after having been forbidden so to do by the person who has lawful control of said premises, whether directly or by notice posted thereon, . . . shall be punished . . . ." The defendant claims that because there was no evidence adduced at trial that notice was posted or that he directly received notice prohibiting him from entering or remaining in the building, there was insufficient evidence to support that he had an intent to commit this particular misdemeanor. Hence, he argues, for that reason alone, the judge should not have permitted the case to proceed. The defendant's reading of § 120 is too narrow. See *Commonwealth* v. *A Juvenile*, 6 Mass. App. Ct. 106, 108 (1978) (owner may "directly forbid entry to the premises by securing them with fences or walls and locked gates or doors"). See generally Stearns, Massachusetts Criminal Law: A District Court Prosecutor's Guide at 640. In this context, the jury could reasonably determine that the various security measures Onujiogu had undertaken put an individual on notice that entry was forbidden. The jury could have inferred that the defendant, in order to enter the building, had necessarily encountered the security measures implemented by Onujiogu to forbid entry, that the defendant had frustrated the security measures, and that the defendant had then entered the apartment. As such, this evidence, viewed in the light most favorable to the Commonwealth, could support an inference that the defendant in-

---

[8]On this prong, the judge, in his charge, instructed the jury that the Commonwealth must prove that the defendant "broke in with the intent to commit a misdemeanor." In doing so, the judge did not define the elements of any particular misdemeanor, and was not required to do so. See *Rogan* v. *Commonwealth*, 415 Mass. 376, 379 (1993) (judge did not err in denying defendant's request that Commonwealth specify underlying misdemeanor "because the particular misdemeanor would not become an element of the crime charged, and indeed, the jury could find the intent to commit an unspecified misdemeanor"). See also *Commonwealth* v. *Willard*, 53 Mass. App. Ct. 650, 656 (2002) ("We are aware of no case that, in circumstances such as these, requires a trial judge to define the elements of the intended [misdemeanor or] felony").

tended to commit a criminal trespass when he broke and entered the building. See *Commonwealth* v. *Moore*, 50 Mass. App. Ct. 730, 733 (2001) (as to intended crime, Commonwealth not required to prove that defendant committed actual offense, only that he intended to do so).

To the extent that the defendant argues that intent to commit a trespass cannot be the underlying intended misdemeanor for a breaking and entering conviction, the Supreme Judicial Court has ruled otherwise in *Rogan* v. *Commonwealth*, 415 Mass. 376, 379 (1993). The defendant argues that the judge, in permitting the case to proceed at the close of the Commonwealth's evidence, erred because "it is inherent that a trespass appears to be subsumed into a [b]reaking and [e]ntering and therefore[] cannot be the sole independent intended misdemeanor necessary to support the charge." To be sure, "there is no such crime as 'breaking and entering' unaccompanied by intent to commit a felony or a misdemeanor. See G. L. c. 266, §§ 14, 15, 16, 17, 18, 19, & 20A. There is such a thing as criminal trespass. It consists of entry of, or remaining in, a dwelling house (among other places) without right after having been forbidden so to do. G. L. c. 266, § 120." *Commonwealth* v. *Vinnicombe*, 28 Mass. App. Ct. 934, 935 (1990). "[C]riminal trespass . . . contains elements which need not be found for breaking and entry with intent to commit a [misdemeanor], notably entering or remaining after having been *forbidden* so to do." *Ibid.* Here, the evidence presented by the Commonwealth — that after breaking and entering into a building, the defendant was seen walking down the stairs of a hallway — was sufficient for the jury to determine that he had broken and entered the building with the intent to commit a trespass therein.

*Judgments affirmed.*